IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| FIELDTURF USA, INC., a Florida corporation, and FIELDTURF TARKETT INC., a Canadian company,<br><br>Plaintiffs,<br><br>v.<br><br>AIRSIDE TURF, INC., a Michigan corporation, and JOSEPH DOBSON, an individual,<br><br>Defendants. | CIVIL ACTION NO. 07-11306<br><br><br><br>**DEMAND FOR JURY** |

## VERIFIED AMENDED COMPLAINT

The Plaintiffs, FieldTurf USA, Inc. and FieldTurf Tarkett Inc. (collectively referred to herein as "FieldTurf") file this Complaint against the Defendants, Joseph Dobson (referred to as "Dobson") and AirSide Turf, Inc. (referred to as "AirSide Turf"), collectively referred to herein as "Defendants," state as follows:

## NATURE OF THE ACTION

1.   This case involves the actions of FieldTurf's former employee, Joseph Dobson, and his current corporation/employer, Airside Turf, Inc., to misappropriate and use for their own benefit confidential, proprietary, and trade secret information belonging to FieldTurf. Dobson's actions in this regard constitute conversion and a breach of his fiduciary duty with FieldTurf under Michigan law. Both Dobson's and AirSide Turf's actions in this regard constitute unfair competition and tortious interference with FieldTurf. Moreover, the actions of Defendants constitute a violation of Michigan's Uniform Trade Secrets Act, MCL 445.1901 *et seq*. as well as conversion of FieldTurf's property under the common law.

## THE PARTIES

2.  FieldTurf Tarkett Inc. is a Canadian corporation, with its principal place of business in Montreal, Quebec, Canada.  FieldTurf Tarkett Inc. designs and manufactures synthetic turf products and distributes these products worldwide.

3.  FieldTurf USA, Inc. is a Florida corporation, with its principal place of business in Dalton, Georgia.  FieldTurf USA, Inc. is a wholly-owned subsidiary of FieldTurf Tarkett Inc.

4.  Joseph Dobson is an individual residing in the State of Michigan, with a business office located at 422 George Street, Milford, Michigan 48381.  Upon information and belief, Joseph Dobson is:  (a) the sole principal owner of co-Defendant AirSide Turf, Inc.; (b) the central figure in the corporation; and (c) actively involved in the direction of virtually all aspects of AirSide Turf's business.

5.  Until approximately late 2005, Dobson was employed as the Vice President of Air FieldTurf (a division of FieldTurf), and, in that capacity, performed significant managerial and officer functions on behalf of FieldTurf.

6.  AirSide Turf, Inc., upon information and belief, is a domestic corporation with its registered office located at 422 George Street, Milford, Michigan 48381.  This corporation was created on or about May 4, 2006 by Dobson for the purpose of engaging in business in interstate commerce and within this District, in competition with FieldTurf in synthetic turf products for use at airports.  A copy of the Certificate of Organization for Airside Turf filed with the Michigan Department of Consumer & Industry Services, Bureau of Commercial Services is attached hereto as **Exhibit A**.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 (a) and (c) because it is a suit between citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. Venue is proper in this Court under 28 U.S.C. §1391(a)(1) and (2).

**FACTUAL BACKGROUND**

9. FieldTurf is a leading innovator in the development, manufacturing and marketing of synthetic turf products for, among other things, use alongside airport runways. In this regard, FieldTurf has expended considerable amounts of time and capital, and human resources to continually develop confidential, proprietary, and trade secret information concerning new products, processes, procedures, techniques, facilities, equipment, devices, research and development activities, business plans and methods, financial data, bid and proposal information, pricing methods and models, marketing strategies, and particularized solutions for customers' requirements, among other things, in association with synthetic turf for use at airports.

**DEFENDANT DOBSON'S EMPLOYMENT WITH FIELDTURF AND HIS ACCESS TO FIELDTURF'S CONFIDENTIAL, PROPRIETARY INFORMATION AND TRADE SECRETS**

10. During the course of Dobson's employment with FieldTurf, Dobson possessed, had access to, and had knowledge of, each of FieldTurf's products, trade secrets, proprietary trade practices, know-how, manufacturing techniques, key employee lists, financial information, customer lists, marketing strategies, product specifications, composition of synthetic turf products, and the identity of FieldTurf's actual and potential customers.

11. In fact, Dobson was intimately and thoroughly familiar with FieldTurf and learned about, and what was involved in formulating FieldTurf's unique solutions to the peculiar needs of particular airport customers in his role as Vice President of the Air FieldTurf division.

3

He also was privy to FieldTurf's project proposals, including bid and proposal information which included unique product designs, manufacturing processes, research and development testing information, and solutions to the peculiar needs of particular airport customers. At no time, did FieldTurf authorize Dobson to disclose and/or utilize such information except for the benefit of FieldTurf.

### DOBSON'S RESIGNATION AND FIELDTURF' SUBSEQUENT DISCOVERY OF HIS WRONGDOING

12. Dobson's association with FieldTurf ended on or about December of 2005. As an officer of FieldTurf, Dobson was bound to certain fiduciary obligations on behalf of FieldTurf. Moreover, he was expected to return all documents, records, and writings relating to FieldTurf's confidential, proprietary, and trade secret information.

13. On or about May 4, 2006, unbeknownst to FieldTurf until recently, Dobson formed a corporation called Airside Turf, to compete with FieldTurf in synthetic turf products for use alongside airport runways and/or to consult to competitors of FieldTurf.

14. On information and belief, Dobson breached his fiduciary duty and caused the unlawful diversion of FieldTurf's proprietary and confidential information by taking with him at least FieldTurf's project proposals to help kick start his AirSide Turf business.

15. On information and belief, Dobson hired away a key employee of FieldTurf's Air FieldTurf division, Ms. Sandy DeSilva, who possessed and continues to possess detailed, critical proprietary information of FieldTurf's, to further assist him in his effort to unfairly compete against FieldTurf.

16. On or about January 15, 2007, Ms. Sandy DeSilva, on behalf of AirSide Turf, transmitted an email to third parities instructing the recipients to "print" the attachment, which contained FieldTurf's confidential, proprietary, and trade secret information, and then to

4

"**DELETE**" the email since "it is an Air[ ]FieldTurf document." A copy of the email is attached hereto as **Exhibit B**. Furthermore, the transmittal attachments included materials that were clearly marked with "Confidential" or "Confidential, Proprietary Information" designations to indicate their confidential nature. A copy of redacted exemplars of the transmitted attachments are attached hereto as **Exhibit C**. Complete versions will be submitted to the Court under seal if deemed necessary.

17. The attachments to the email of **Exhibit B** contained FieldTurf's proprietary information including, detailed and proprietary designs of products for use at an airport, manufacturing processes, research and development testing information, business proposals, and solutions to the peculiar needs of a particular airport customer. Clearly, the proposals belonged to FieldTurf, and were taken from them by or for Dobson and AirSide Turf without FieldTurf's consent. This provides an independent basis for concern that FieldTurf's confidential, proprietary, and trade secret information is being used for Defendants' own benefit.

18. On March 27, 2007, FieldTurf became aware that Defendants are submitting a bid for an artificial turf installation project at Baltimore/Washington International Airport ("BWI"). A copy of the project description as well as information concerning Invitations to Bid is attached hereto as **Exhibit D**.

19. At least on or before April of 2004, FieldTurf had spent significant time and resources to educate BWI about the possible benefits of synthetic turf installed alongside runways.

20. On information and belief, Dobson, through his former capacity with FieldTurf, had knowledge of FieldTurf's relationship with BWI.

5

21. Now, on information and belief, Dobson is improperly using FieldTurf's contact lists to acquire the artificial turf installation project now being considered by BWI.

22. Also, on information and belief, Dobson will undoubtedly use FieldTurf's highly confidential, proprietary, and trade secret bid and proposal information in Defendants' efforts to secure the BWI bid.

23. BWI has not invited Air FieldTurf to bid on the project and has refused to take its calls.

24. On information and belief, Dobson, in his capacity as the owner/president of AirSide Turf brokered deals with or consulted for/with competitors of FieldTurf, including companies known as AvTurf, LLC, Sportexe, and/or Triexe Management.

25. On information and belief, Dobson was facilitating a deal to acquire AvTurf's assets on behalf of Sportexe, and/or Triexe Management.

26. In doing so, on information and belief, Dobson divulged, disseminated, and shared FieldTurf's confidential, proprietary, and trade secret information with third parties. In particular, Dobson's company, AirSide Turf, provided FieldTurf's project proposals to AvTurf, which may already have or will likely find its way into the hands of Triexe Management.

27. As with other confidential information, FieldTurf's project proposals include highly confidential and extremely valuable information such as its unique product designs, manufacturing processes, and customer requirements. Indeed, this information gives FieldTurf a business advantage over its competitors, including the aforementioned.

28. On information and belief, by copying and misappropriating FieldTurf's confidential, proprietary, and trade secret information, Dobson has a blueprint of FieldTurf's

6

product development plans, detailed drawings, and methodology, without any of the investment of time and money FieldTurf has devoted to the development of its trade secrets.

29. On information and belief, it is inevitable that competitors will improperly acquire FieldTurf's confidential, proprietary, and trade secret information due to Dobson's disclosure or inevitable disclosure to competitors as a result of their affiliations with him.

30. Based on the aforementioned, FieldTurf asserts that Defendants can inflict and has inflicted irreparable harm upon FieldTurf, and engaged in unfair competition in a number of ways, including:

- targeting the highest profit margin and highest volume customers of FieldTurf;

- undercutting FieldTurf's prices;

- anticipating and thwarting FieldTurf's existing or future marketing strategies with respect to specific customers or industries; and/or

- avoiding the time and expense associated with developing particularized project proposals, which include unique designs, processes, methods, specifications, and research data, etc.

31. By virtue of Defendants' unlawful conduct described above, FieldTurf has already suffered serious and extensive economic and business injury, and if such conduct is not enjoined, FieldTurf faces further injury which is immediate and irreparable. The harm to FieldTurf includes, but is not limited to, the conversion, misappropriation, misuse, and disclosure of FieldTurf's trade secrets and confidential information, and the impairment of, and interference with, FieldTurf's contractual relations with their customers.

### COUNT I
### MISAPPROPRIATION OF TRADE SECRETS (AGAINST DEFENDANTS)

32. FieldTurf incorporates by reference paragraphs 1 through 31 of its Complaint.

33. Defendants, by the conduct described above, have engaged in actual or threatened misappropriation of FieldTurf' confidential, proprietary, and trade secret information, and are thus unfairly competing with FieldTurf in violation of the common law and the Michigan Uniform Trade Secrets Acts in that: (a) FieldTurf has devoted substantial resources to the development of its confidential, proprietary, and trade secret information, spending hundreds of thousands of dollars over many years; (b) Dobson possesses this confidential, proprietary, and trade secret information belonging to FieldTurf that will afford his AirSide Turf a competitive advantage; (c) Dobson, a former officer of FieldTurf, owes a fiduciary duty not to disclose this information; (d) Dobson facilitates deals and provides business strategies to FieldTurf's competitors, which he will inevitably divulge, disseminate, or share FieldTurf's confidential, proprietary, and trade secret information; and (e) such disclosure would be unfair and unjust to FieldTurf and would cause FieldTurf to suffer irreparable harm.

34. FieldTurf's confidential, proprietary, and trade secret information, individually and collectively, derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use.

35. FieldTurf takes appropriate and reasonable measures to guard the secrecy of its confidential, proprietary, and trade secret information.

36. FieldTurf has no adequate remedy at law and would suffer substantial and immediate irreparable harm unless Dobson and AirSide Turf are enjoined as requested below.

37. Greater injury will be inflicted on FieldTurf by the denial of this relief than will be inflicted on Dobson and AirSide Turf by the granting of this relief.

38. The public interest favors the issuance of an order enjoining Defendants from obtaining or utilizing FieldTurf's confidential, proprietary, and trade secret information. Consumers benefit from fair competition between FieldTurf and Defendants and should not be deprived of that competition by Defendants' unlawful utilization of FieldTurf's confidential, proprietary, and trade secret information.

## COUNT II
### UNFAIR COMPETITION (AGAINST DEFENDANTS)

39. FieldTurf incorporates by reference paragraphs 1 through 38 of its Complaint.

40. By taking, possessing and/or using FieldTurf's confidential, proprietary, and trade secret business information, without any right to it, Defendants are competing unfairly against FieldTurf by offering products and services to customers based on misappropriated information. Such conduct is likely to deceive a substantial portion of customers and potential customers, and likely to influence the purchasing decisions of potential customers, to the harm and detriment of FieldTurf.

41. Defendants' actions were intentional, willful, outrageous and malicious, and justify the imposition of punitive damages.

## COUNT III
### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS (AGAINST DEFENDANTS)

42. FieldTurf incorporate by reference paragraphs 1 through 41 of its Complaint.

43. Valuable business relationships currently exist and have existed for a long time between FieldTurf and its customers and potential customers, including the BWI airport.

44. Defendants have knowledge of FieldTurf's existing and prospective business relationships, including BWI airport.

45. On information and belief, notwithstanding this knowledge, Defendants have jointly exploited the relationships and confidential information which Dobson developed and acquired while employed and otherwise affiliated with FieldTurf to their benefit.

46. On information and belief, this improper conduct is interfering with FieldTurf's business and its existing and prospective contractual relationships with third parties, thus causing injury to FieldTurf.

47. This interference by Dobson, through the use of, and in concert with, co-Defendant AirSide Turf, is without privilege and justification and their conduct is willful, wanton, and malicious.

48. Defendants' wrongful, improper, intentional, and unprivileged interference with FieldTurf's contractual rights is continuing up to the present time and will continue into the future.

49. By reason of the foregoing acts and conducts of Defendants, FieldTurf will, unless an injunction is issued by this Court, suffer irreparable harm in the nature of a loss of goodwill, business relationships, and confidential information, which cannot be adequately compensated by damages.

50. Unless preliminarily and permanently enjoined, Defendants will continue to engage in such activities, directly or indirectly, in violation of their obligations under common law.

51. FieldTurf has no adequate remedy at law and injunctive relief is necessary.

52. Alternatively, Defendants are causing injury to FieldTurf, and it seeks compensatory and punitive damages by reason of Defendants' intentional and malicious conduct.

## COUNT IV
### BREACH OF FIDUCIARY DUTY (AGAINST DOBSON)

53. FieldTurf incorporate by reference paragraphs 1 through 52 of its Complaint.

54. By reason of Dobson's position and status with FieldTurf, Dobson owes and continues to owe to FieldTurf the utmost in loyalty and fair dealing.

55. The aforesaid acts by Dobson constitute clear and blatant examples of a breach of fiduciary duty and a breach of loyalty and trust.

56. Plaintiff has been injured by this breach and is entitled to compensatory and punitive damages by reasons thereof.

## COUNT V
### CONVERSION (AGAINST DOBSON)

57. FieldTurf incorporate by reference paragraphs 1 through 56 of its Complaint.

58. FieldTurf is the true and rightful owner of FieldTurf's confidential, proprietary, and trade secret rights and interests in the project proposals.

59. By improperly utilizing this information for its own benefit, and by physically taking this information for its own benefit, Dobson has deprived FieldTurf of its exclusive, confidential, proprietary, and trade secret rights and interests in the project proposals.

60. FieldTurf has not authorized Dobson to improperly use this information, nor did it authorize Dobson to physically retain this information.

61. As a consequence of the foregoing, FieldTurf has suffered and will continue to suffer irreparable injury and damages.

62. As a result of Dobson's conversion, which was perpetrated with actual malice, FieldTurf is entitled to punitive damages.

WHEREFORE, FieldTurf respectfully requests the following relief:

a. That Defendants be enjoined, temporarily, preliminarily and permanently thereafter, from disclosing to anyone, including but not limited to, officers, employees, agents representatives, contractors, customers and prospective customers, FieldTurf's confidential, propriety, and trade secret information.

b. That Defendant Dobson be enjoined, temporarily, preliminarily and permanently thereafter, from participating or assisting Defendant AirSide in any way, in the development, manufacture or production of synthetic turf products associated with use in airport runways.

c. That Defendant AirSide Turf be enjoined, temporarily, preliminarily and permanently thereafter, from aiding or assisting Dobson in any way, in the development, manufacture or production of synthetic turf products associated with use in airport runways.

d. That Defendants, and all other persons or entities acting in concert with them or their behalf, be enjoined, temporarily, preliminarily, and permanently thereafter, from directly or indirectly using, disclosing or retaining any confidential, proprietary, or trade secret information of FieldTurf.

e. That Defendants, and all other persons or entities acting in concert with them or on their behalf, be enjoined, temporarily, preliminarily, and permanently thereafter, from directly or indirectly soliciting, inducing, recruiting, encouraging, assisting, advising, or directing any individual who possesses or has access to FieldTurf's confidential, proprietary, or trade secret information to work for AirSide Turf.

f. That Defendants, and all other persons or entities acting in concert with them or on their behalf, deliver and destroy any confidential, proprietary, or trade secret information of FieldTurf to FieldTurf.

g. A judgment in FieldTurf's favor and against Defendants for monetary damages, including, but not limited to, all amounts necessary to compensate FieldTurf for Defendants' wrongful activities including reasonable attorneys' fees and costs.

h. A judgment in FieldTurf's favor and against Defendants for punitive and/or exemplary damages for its willful and malicious conduct.

i. That this Court order such other and further relief as it deems appropriate.

## **JURY DEMAND**

FieldTurf demands trial by jury of all issues triable to a jury.

Respectfully submitted,

DATED: March 29, 2006

/s/ Jovan N. Jovanovic
Jovan N. Jovanovic (P66644)
The Watson IP Group, PLC
3133 Highland Drive, Suite 200
Hudsonville, MI 49426
(616) 855-1521 Telephone
(866) 369-7391 Facsimile
Jjovanovic@watson-ip.com

ATTORNEYS FOR PLAINTIFFS

## VERIFICATION

I, John Gilman, CEO of Plaintiffs FieldTurf USA, Inc. and FieldTurf Tarkett Inc., am authorized to make this Verification on behalf of Plaintiffs FieldTurf USA, Inc. and FieldTurf Tarkett Inc., and hereby verify under penalty of perjury pursuant to 28 U.S.C. §1746 that I have read the foregoing Verified Complaint and based on my personal knowledge and my knowledge of information reported to me by subordinates and colleagues who report to me, the factual allegations contained in the Verified Amended Complaint are true and correct.

_____
John Gilman, CEO of FieldTurf

Executed on: March 29, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| FIELDTURF USA, INC., a Florida corporation, and FIELDTURF TARKETT INC., a Canadian company,<br><br>Plaintiffs,<br><br>v.<br><br>AIRSIDE TURF, INC., a Michigan corporation, and JOSEPH DOBSON, an individual,<br><br>Defendants. | CIVIL ACTION NO. 07-11306<br><br><br><br><br>**DEMAND FOR JURY** |

## PROOF OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the following documents:

Verified Amended Complaint;

Motion for Expedited Discovery with Memorandum in Support thereof and Proposed Order; and

Motion for Ex Parte Temporary Restraining Order with Memorandum in Support thereof and Proposed Order;

was transmitted by email and by Overnight Courier to:

Henry J. Andries, Jr.
Honigman Miller Schwartz and Cohn LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
handries@honigman.com

                                           /s/ Jovan N. Jovanovic
                                           Jovan N. Jovanovic