**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| FIELDTURF USA, INC., a Florida corporation, and FIELDTURF TARKETT INC., a Canadian company,<br><br>                  Plaintiffs,<br><br>v.<br><br>AIRSIDE TURF, INC., a Michigan corporation, and JOSEPH DOBSON, an individual,<br><br>                  Defendants. | CIVIL ACTION NO.: 07-11306<br><br>**FIELDTURF'S *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER AND PRESERVATION OF DOCUMENTS, SOFTWARE, AND THINGS** |

      Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, the Plaintiffs, FieldTurf USA, Inc. and FieldTurf Tarkett Inc. (collectively referred to herein as "FieldTurf"), by their attorneys, hereby respectfully move this Honorable Court to enter a Temporary Restraining Order:

      a.     Enjoining Defendants Joseph Dobson and AirSide Turf, as well as their officers, directors, agents, employees, representatives or other persons acting, or purporting to act, on behalf of Defendants, from disclosing to anyone, including but not limited to, officers, employees, agents representatives, contractors, customers and prospective customers, including Baltimore/Washington International Airport, and Maryland Aviation Administration, any information or documentation which was acquired as the result of any relationship by Dobson with FieldTurf. Such information and documentation, including, but not limited to, FieldTurf's product specifications, pricing, detailed systems for fastening the synthetic turf grass to the runway side, proprietary installation techniques for the synthetic turf grass/infill, and detailed

drawings of the airport runway edges, as well as any knowledge gained about any actual or prospective customer of synthetic turf as a result of his relations with FieldTurf.

      b.      Enjoining Defendants Joseph Dobson and AirSide Turf, as well as their officers, directors, agents, employees, representatives or other persons acting, or purporting to act, on behalf of Defendants, from participating or assisting Defendant AirSide in any way, in the development, manufacture or production of synthetic turf products associated with use in airport runways.

      c.      To compel Defendants, and all other persons or entities acting in concert with them or on their behalf to return any all documentation developed while Dobson was employed by FieldTurf, as well as, all documentation which was developed thereafter, which in any way relied upon FieldTurf's documentation or any information Dobson became aware of as a result of his affiliation with FieldTurf.

      d.      Enjoining Defendants Joseph Dobson and AirSide Turf, as well as their officers, directors, agents, employees, representatives or other persons acting, or purporting to act, on behalf of Defendants, from brokering, consulting, or assisting any entity associated with, or contemplating becoming involved in the manufacturing and/or marketing of synthetic turf products or services in association with airport runways.

      e.      Enjoining Defendants Joseph Dobson and AirSide Turf, as well as their officers, directors, agents, employees, representatives or other persons acting, or purporting to act, on behalf of Defendants, from destroying, modifying and/or altering, any of its business records relating to synthetic turf products for use at airports, or from erasing any software and/or files on any computer, or portable electronic storage medium (i.e., flash cards, portable hard drives, etc.)

within their possession or control, in order to preserve the status quo until those records can be examined.

FieldTurf's attorneys certify that they gave Defendants notice of this Motion by transmitting via email information pertaining to the relief requested by way of the temporary restraining order, and to the discovery that is requested on an expedited basis. Additionally, FieldTurf's attorneys certify that a telephone conversation took place between counsel for FieldTurf and Defendants, wherein Defendant's indicated that they will not agree to a temporary restraining order, and that they will not agree to the expedited discovery.

However, notice to Defendants should not be required because immediate and irreparable injury, loss, and damage will result to FieldTurf if Defendants are not temporarily enjoined from disclosing and/or relying upon FieldTurf's confidential information and trade secrets in conducting their business.

Under Local Rule 65.1, a request to Defendants under Local Rule 7.1(a) for concurrence in the relief sought is not necessary for a temporary restraining order.

Under Rule 65(c) of the Federal Rules of Civil Procedure, FieldTurf believes that the bond should be no greater than $500.00. Accordingly, FieldTurf agrees to obtain such a bond, or a higher bond if this Court so requires, as a prerequisite to issuance of the temporary restraining order.

This Motion is based on the Verified Amended Complaint filed concurrently herewith. FieldTurf's Memorandum in Support of its Motion for Temporary Restraining Order is attached hereto, as well as a proposed Order, providing the relief sought by FieldTurf at this time.

Respectfully submitted

DATED:  March 29, 2007                         /s/      Jovan N. Jovanovic
                                                                    Jovan N. Jovanovic (P66644)
                                                                    The Watson IP Group, PLC
                                                                    3133 Highland Drive, Suite 200
                                                                    Hudsonville, MI 49426
                                                                    (616) 855-1521 Telephone
                                                                    (866) 369-7391 Facsimile
                                                                    Jjovanovic@watson-ip.com

                                                                    ATTORNEYS FOR PLAINTIFFS

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| FIELDTURF USA, INC., a Florida corporation, and FIELDTURF TARKETT INC., a Canadian company,<br><br>Plaintiffs,<br><br>v.<br><br>AIRSIDE TURF, INC., a Michigan corporation, and JOSEPH DOBSON, an individual,<br><br>Defendants. | CIVIL ACTION NO.:  07-11306 |

**MEMORANDUM IN SUPPORT OF *EX PARTE* MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRESERVATION OF
DOCUMENTS, SOFTWARE, AND THINGS**

**ISSUES NO. 1**

   Whether Plaintiffs are entitled to a temporary restraining order prohibiting Defendants from further misappropriating and using Plaintiffs' confidential, proprietary, and trade secret bid and project proposal information?

**ISSUE NO. 2**

   Whether this Court should enjoin Defendants from destroying, modifying and/or altering, any of its business records relating to synthetic turf products for use at airports, or from erasing any software and/or files on any computer within their possession or control?

I. **INTRODUCTION**

Without this Court's injunction, beginning immediately, Defendants Joseph Dobson ("Dobson") and AirSide Turf, Inc. ("AirSide"), will (and have) continue to interfere with FieldTurf's business relationships with Baltimore/Washington International Airport ("BWI"), and continue to harm FieldTurf's business by misappropriating its confidential, proprietary, and trade secret information with competitors of FieldTurf.

FieldTurf respectfully submits this Memorandum in Support of its Motion for a Temporary Restraining Order and Preservation of Documents, Software, and Things (the "Motion"). FieldTurf seeks to, at least, restrain Defendants from interfering with the potential business relationships of FieldTurf and not to disseminate any of its proprietary information.

II. **STATEMENT OF THE FACTS**

    A. **PLAINTIFFS FIELDTURF**

FieldTurf is a leading innovator in the development, manufacturing and marketing of synthetic turf products for, among other things, use alongside airport runways. In this regard, FieldTurf has expended considerable amounts of time and capital, and human resources to continually develop confidential, proprietary, and trade secret information concerning new products, processes, procedures, techniques, facilities, equipment, devices, research and development activities, business plans and methods, financial data, bid and proposal information, pricing methods and models, marketing strategies, and particularized solutions for customers' requirements, among other things, in association with synthetic turf for use at airports. (Verified Amended Complaint at ¶ 9).

    B. **DEFENDANT DOBSON**

Dobson was employed as the Vice President of Air FieldTurf (a division of FieldTurf), and in that capacity, performed significant managerial and officer functions on behalf of FieldTurf. (Verified Amended Complaint at ¶5). As the Vice President, Dobson was entrusted with valuable, confidential information about FieldTurf's bid and proposal information, including product specifications, detailed attachment systems for fastening the synthetic turf grass to the runway side, proprietary installation techniques for the synthetic turf grass/infill, and detailed drawings of its products.

Dobson's association with FieldTurf ended on or about December of 2005. As an officer of FieldTurf, Dobson was bound to certain fiduciary obligations on behalf of FieldTurf. Moreover, he was expected to return all documents, records, and writings relating to FieldTurf's confidential, proprietary, and trade secret information. (Verified Amended Complaint at ¶ 12).

At no time, did FieldTurf authorize Dobson to disclose and/or utilize such information except for the benefit of FieldTurf. (Verified Amended Complaint at ¶ 11).

### C. DEFENDANT AIRSIDE TURF

On or about May 4, 2006, unbeknownst to FieldTurf until recently, Dobson formed a corporation called Airside Turf, to compete with FieldTurf in synthetic turf products for use alongside airport runways and/or to consult to competitors of FieldTurf. (Verified Amended Complaint at ¶ 13).

### D. FIELDTURF' SUBSEQUENT DISCOVERY OF DOBSON'S WRONGDOING

Subsequent to his departure from Air FieldTurf, Dobson hired a key employee of FieldTurf's Air FieldTurf division, Ms. Sandy DeSilva, who possessed and continues to possess detailed, critical proprietary information of FieldTurf's, to further assist him in his effort to unfairly compete against FieldTurf. (Verified Amended Complaint at ¶ 15).

On or about January 15, 2007, Ms. Sandy DeSilva, on behalf of AirSide Turf, transmitted an email to third parities instructing the recipients to "print" the attachment, which contained FieldTurf's confidential, proprietary, and trade secret information, and then to "**DELETE**" the email since "it is an Air[ ]FieldTurf document." (A copy of the email is attached to FieldTurf's Verified Amended Complaint as **Exhibit B**.) Furthermore, the transmittal attachments included materials that were clearly marked with "Confidential" or "Confidential, Proprietary Information" designations to indicate their confidential nature. (Verified Amended Complaint at ¶ 16). (A copy of redacted exemplars of the transmitted attachments are attached to FieldTurf's Verified Amended Complaint as **Exhibit C**).

The attachments to the email of **Exhibit B** in the Verified Amended Complaint contained FieldTurf's proprietary information including, detailed and proprietary designs of products for use at an airport, manufacturing processes, research and development testing information, business proposals, and solutions to the peculiar needs of a particular airport customer.  Clearly, the proposals belonged to FieldTurf, and were taken from them by or for Dobson and AirSide Turf without FieldTurf's consent. (Verified Amended Complaint at ¶ 17).

Also, on March 27, 2007, FieldTurf became aware that Defendants are submitting a bid for an artificial turf installation project at Baltimore/Washington International Airport ("BWI"). A copy of the project description as well as information concerning Invitations to Bid is attached as **Exhibit D** in the Verified Complaint. (Verified Amended Complaint at ¶ 18).

At least on or before April of 2004, FieldTurf had spent significant time and resources to educate BWI about the possible benefits of synthetic turf installed alongside runways. (Verified Amended Complaint at ¶ 19).  Dobson, through his former capacity with FieldTurf, had knowledge of FieldTurf's relationship with BWI. (Verified Amended Complaint at ¶ 20).  Now,

5

Dobson is improperly using FieldTurf's contact lists to acquire the artificial turf installation project now being considered by BWI. (Verified Amended Complaint at ¶ 21). Also, Dobson will undoubtedly use FieldTurf's highly confidential, proprietary, and trade secret bid and proposal information in Defendants' efforts to secure the BWI bid. (Verified Amended Complaint at ¶ 22). This is inevitable inasmuch as Dobson, in his role as Vice President of Air FieldTurf, was chiefly responsible for working on the BWI project. (Verified Amended Complaint at ¶ 23).

FieldTurf was also informed that Dobson, in his capacity as the owner/president of AirSide Turf brokered deals with or consulted for/with competitors of FieldTurf, including companies known as AvTurf, LLC, Sportexe, and/or Triexe Management. (Verified Amended Complaint at ¶ 24). In fact, on information and belief, Dobson was facilitating a deal to acquire AvTurf's assets on behalf of Sportexe, and/or Triexe Management. (Verified Amended Complaint at ¶ 25).

In doing so, on information and belief, Dobson divulged, disseminated, and shared FieldTurf's confidential, proprietary, and trade secret information with third parties. In particular, Dobson's company, AirSide Turf, provided FieldTurf's project proposals to AvTurf, which may already have or will likely find its way into the hands of its competitors, including, but not limited to, Triexe Management. (Verified Amended Complaint at ¶ 26).

As with other confidential information, FieldTurf's project proposals include highly confidential and extremely valuable information such as its unique product designs, manufacturing processes, and customer requirements. Indeed, this information gives FieldTurf a business advantage over its competitors, including the aforementioned. (Verified Amended Complaint at ¶ 27).

6

By copying and misappropriating FieldTurf's confidential, proprietary, and trade secret information, Dobson has a blueprint of FieldTurf's product development plans, detailed drawings, and methodology, without any of the investment of time and money FieldTurf has devoted to the development of its trade secrets. (Verified Amended Complaint at ¶ 28).

It is inevitable that competitors will improperly acquire FieldTurf's confidential, proprietary, and trade secret information due to Dobson's disclosure or inevitable disclosure to competitors as a result of their affiliations with him. (Verified Amended Complaint at ¶ 29).

## III.   ARGUMENT

### A.   THE STANDARD FOR INJUNCTIVE RELIEF

A temporary restraining order or other preliminary injunctive relief is appropriate where the moving party demonstrates (1) a likelihood of success on the merits; (2) irreparable harm could result to the moving party if the preliminary injunction is not granted; (3) issuing the preliminary injunction would serve the public interest; and (4) there are no possibility of substantial harm to others. *Sandison v. Michigan High School Athletic Association, Inc.*, 64 F.3d 1026, 1030 (6th Cir. 1995); *Lowry Computer Products, Inc. Head*, 984 F.Supp. 1111, 1112 (E.D. Mich. 1997). The same factors allow a court to grant temporary injunctive relief without notice to the adverse party to prevent irreparable injury. Fed. R. Civ. P. 65(b); *Southerland v. Fritz*, 955 F. Supp. 760, 761 (E.D. Mich. 1996). The standard for preliminary injunction is not a rigid and comprehensive test, and the four factors are to be balanced, not prerequisites that must be satisfied, but instead "these factors simply guide the discretion of the court; they are not meant to be rigid and unbending requirements." *In re Eagle-Picher Indus., Inc.*, 963 F.2d 855, 859 (6th Cir. 1992). Each factor in this case weighs in favor of granting injunctive relief.

7

### B. FIELDTURF IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS

FieldTurf can demonstrate that, at the very least, it is likely to succeed on the merits of its misappropriation of trade secrets claim, and its tortious interference claim. Consequently, it can establish the initial element necessary for injunctive relief.

#### 1. MISAPPROPRIATION OF TRADE SECRETS

To establish a claim for misappropriation of trade secrets under Michigan law, a plaintiff must show: (1) the existence of a trade secret; and (2) its actual or threatened misappropriation either by acquisition or disclosure. See, M.C.L. §445.1902. The Michigan Uniform Trade Secrets Acts ("MUTSA") specifically authorizes injunctive relief to prevent the actual or threatened misappropriation of trade secrets. See, M.C.L. §445.1903.

FieldTurf is likely to succeed on its claim that Defendants have misappropriated, and continues to threaten to misappropriate, its trade secrets. By virtue of his position with FieldTurf as a Vice President of Air FieldTurf (a division of FieldTurf), Dobson was intimately and thoroughly familiar with FieldTurf's bid and proposal information, which were highly confidential, proprietary, and trade secret information.

FieldTurf has developed this information at substantial investment over time. Not to mention, FieldTurf's project proposals provide FieldTurf with a significant competitive advantage because they derive independent economic value by virtue of the fact that they are not readily ascertainable by proper means and not available from outside sources. Moreover, FieldTurf has taken reasonable efforts under the circumstances to maintain its secrecy by marking them as "Confidential" or "Confidential, Proprietary Information" to indicate their confidentiality nature.

Nevertheless, on information and belief, Dobson may have already misappropriated FieldTurf's confidential, proprietary, and trade secret information to its competitors, namely to AvTurf, LLC and/or Triexe Management. An email, which originated from Defendant AirSide Turf, instructed the recipients to "print" the attachment, which contained the information FieldTurf seeks to protect here, and then to "**DELETE**" the email since "it is an Air[ ]FieldTurf document." The recipients included employees of AirSide Turf as well as a representative of AvTurf, a competitor of FieldTurf. (**Exhibit B** as attached in the Verified Amended Complaint at ¶ 16).

Also, Dobson is, on information and belief, brokering or facilitating deals with or consulting for competitors of FieldTurf, including companies known as AvTurf and Triexe Management. Specifically, Dobson was or is, on information and belief, facilitating a deal to acquire AvTurf's assets on behalf of Triexe Management.

Base on the above information, Dobson not only provided FieldTurf's project proposals to AvTurf, one of its competitors, but FieldTurf believes that it may already have or will likely find its way into the hands of Triexe Management, another competitor. Now, it is inevitable that these competitors will acquire or have acquired a blueprint of FieldTurf's highly confidential, proprietary, and trade secret information, without any of the investment of time and money FieldTurf has devoted to the development of same – all due to Dobson's disclosure or inevitable disclosure to them as a result of their affiliations with him. As such, the inevitable disclosure of this information necessitates injunctive relief.

  **2. FIELDTURF WILL LIKELY SUCCEED ON ITS TORTIOUS INTERFERENCE CLAIM**

To make out a claim for tortious interference, a plaintiff need only show (1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy

9

on the part of the defendant, and (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage to the plaintiff. *BPS Clinical Lab. v. Blue Cross & Blue Shield,* 217 Mich. App. 687, 698-699 (1996).

FieldTurf is entitled to injunctive relief preventing Defendants from further proceeding with their tortious interference with FieldTurf's business relationships with its customers. FieldTurf had a reasonable expectation of a beneficial and ongoing relationship with BWI. Even though FieldTurf has not yet entered into contractual relations with BWI, they still have an ongoing right to enter into conversations with BWI without Defendants' interference[1].

The remaining elements are also shown. Clearly, through his previous position with FieldTurf, Dobson was and is aware of the possibility of ongoing relationships between FieldTurf and BWI. Now, Dobson is purposefully interfering with that relationship by trying to take away business that FieldTurf would have obtained through its previous relations with BWI, and by using FieldTurf's materials for a competitive advantage. Inasmuch as the BWI bid date is April 16, 2007, time is of the essence. As such, Defendants should be enjoined immediately.

C. **FIELDTURF WILL SUFFER IMMEDIATE AND IRREPARABLE HARM IN THE ABSENCE OF INJUNCTIVE RELIEF.**

Courts have repeatedly held that the disclosure of trade secrets and/or confidential information is *per se* irreparable harm justifying the entry of injunctive relief. See, *Basicomputer Corp., v. Scott*, 973 F.2d, 507, 511-12 (6th Cir. 1992) (loss of fair competition and customer goodwill from disclosure of confidential information was irreparable harm to support preliminary injunction); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Ran*, 67 F.Supp.2d 764, 779 (E.D. Mich. 1999) (disclosure of confidential information was irreparable harm to support preliminary injunction); *Chem-Trend Inc. v. McCarthy*, 780 F.Supp. 458, 463 (E.D. Mich. 1991)

---

[1] BWI has not invited Air FieldTurf to bid on the project and has refused to take its calls.

10

(disclosure of confidential information supported finding of irreparable harm for issuance of preliminary injunction).

Similar to these cases, FieldTurf will suffer irreparable harm unless Dobson and AirSide Turf are enjoined from disclosing and using the confidential, proprietary, and trade secret information that FieldTurf entrusted to Dobson during his employment with FieldTurf. Already, Dobson has disseminated FieldTurf's highly confidential project proposals to its competitors, enabling them to have a blueprint for displacing FieldTurf in its position as industry leader. This information would allow any competitor to solicit FieldTurf's customers and potential customers, with full knowledge of FieldTurf's proposals. In the absence of injunctive relief, a competitor could effectively use the very information developed by FieldTurf to cause irreparable harm to it. The Court should, therefore, order injunctive relief to prevent this result.

### D.     The Balance of Hardships Tips in Favor of Injunctive Relief

The harm that FieldTurf will suffer if an injunction is not issued overwhelmingly outweighs the harm, if any, that Defendants will suffer if it is issued. An immediate injunction will only preserve the status quo merely prohibiting Defendants from misappropriating FieldTurf's confidential, proprietary, and trade secret information. "The object of preliminary injunctions is to preserve the status quo, so that upon the final hearing the rights of the parties may be determined without injury to either." *Consumers Power Co. v. Michigan Public Service Com.*, 415 Mich. 134, 154 (1982).

Defendants' disclosures, dissemination, and/or inevitable disclosure have already caused incalculable harm to FieldTurf as discussed above. In contrast, the harm to Dobson caused by an injunction would simply be a requirement that he abide by his fiduciary duty as the former Vice President of Air FieldTurf (a division of FieldTurf).

Even if an injunction were to cause some financial harm to Defendants, such harm is of their own doing. In *ISC-Bunker Ramo Corp. v. Altech, Inc.*, 765 F.Supp. 1310, 1335 (N.D. Ill. 1990), the court held that in a trade secret misappropriation case, "the respondent has no equitable standing to complain of being deprived of the use of information … that it had no right to use and appropriate in the first instance." Thus, the harm to FieldTurf that will result if the injunction is not issued overwhelmingly outweighs the harm to Defendants, if any.

### E. Injunctive Relief Furthers the Public Interest

Granting FieldTurf's request for injunctive relief will serve the public interest in encouraging open and frank communications between principals (FieldTurf) and agents (Dobson), necessitating an injunction in this case. Moreover, the public will benefit in that:

> A party who develops or possesses confidential information or trade secrets belonging to his employer should not be allowed complete freedom to terminate his association and then use this very knowledge to undercut the employer who had taken him into his confidence. This conduct, which amounts to a virtual 'stab in the back' gives a competitor an unfair advantage and is inconsistent with our principles of fair play.

*Follmer, Rudzewicz & Co. v. Kosco*, 420 Mich. 394, 407 at n. 6, quoting *United Ins. Co. of America v. Dienno*, 248 F. Supp. 553, 557 (E.D. Pa. 1965).

### IV. PRESERVATION OF DOCUMENTS, SOFTWARE AND THINGS

At this time, to facilitate subpart (e) of the accompanying Motion for a Temporary Restraining Order, FieldTurf requests that Defendants Joseph Dobson and AirSide Turf, as well as their officers, directors, agents, employees, representatives or other persons acting, or purporting to act, on behalf of Defendants, be enjoined from destroying, modifying and/or altering, any of its business records relating to synthetic turf products for use at airports, or from erasing any software and/or files on any computer (or portable electronic storage medium (i.e.,

12

flash cards, portable hard drives, etc.) within their possession or control, in order to preserve the status quo until those records can be examined.

Also, for FieldTurf to prepare adequately for a preliminary injunction hearing in this matter, it is necessary that this Court enter an Order directing that all relevant information be preserved for purposes of discovery and hearing. Defendants will not be harmed by such an Order. In contrast, denial of the request to maintain evidence intact will substantially and irreparably harm FieldTurf.

Thus, this Court should enter an Order as discussed above.

### V. CONCLUSION

For the foregoing reasons, FieldTurf's Motion for *Ex Parte* Temporary Restraining Order and Preservation of Documents, Software, and Things should be granted.

Respectfully submitted

DATED: March 29, 2007

/s/ Jovan N. Jovanovic
Jovan N. Jovanovic (P66644)
The Watson IP Group, PLC
3133 Highland Drive, Suite 200
Hudsonville, MI 49426
(616) 855-1521 Telephone
(866) 369-7391 Facsimile
Jjovanovic@watson-ip.com

ATTORNEYS FOR PLAINTIFFS

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| FIELDTURF USA, INC., a Florida corporation, and FIELDTURF TARKETT INC., a Canadian company,<br><br>Plaintiffs,<br><br>v.<br><br>AIRSIDE TURF, INC., a Michigan corporation, and JOSEPH DOBSON, an individual,<br><br>Defendants. | CIVIL ACTION NO. 07-11306<br><br><br><br><br><br>**DEMAND FOR JURY** |

**PROOF OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the following documents:

Verified Amended Complaint;

Motion for Expedited Discovery with Memorandum in Support thereof and Proposed Order; and

Motion for Ex Parte Temporary Restraining Order with Memorandum in Support thereof and Proposed Order;

was transmitted by email and by Overnight Courier to:

Henry J. Andries, Jr.
Honigman Miller Schwartz and Cohn LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
handries@honigman.com

     /s/ Jovan N. Jovanovic
     Jovan N. Jovanovic