**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

FIELDTURF USA, INC., a Florida corporation, and
FIELDTURF TARKETT INC., a Canadian company,

Plaintiffs,

Civil Action No. 07-11306
Hon. Avern Cohn

vs

AIRSIDE TURF, INC., a Michigan corporation, and
JOSEPH DOBSON, an individual

Defendants.

---

THE WATSON IP GROUP, PLC
Jovan N. Jovanovic (P66644)
Attorney for Plaintiffs
3133 Highland Drive, Suite 200
Hudsonville, MI 49426
(616)855-1521

FACTOR & LAKE, LTD.
Jody L. Factor
Attorneys for Plaintiffs
1327 W. Washington Blvd.
Suite 5G/H
Chicago, IL 60607
(312) 226-1818

HONIGMAN MILLER SCHWARTZ
AND COHN LLP
William D. Sargent (P38143)
Henry J. Andries, Jr. (P53669)
Robert J. Muchnick (P62369)
Attorneys for Defendants
2290 First National Building
Detroit, MI 48226
(313) 465-7000

---

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, Defendants AirSide Turf, Inc. and Joseph Dobson ("Defendants") respectfully move for summary judgment as a matter of law. Defendants' Motion is supported by their attached Brief with supporting Exhibits.

Pursuant to L.R. 7.1(a)(2), on June 20, 2007, there was a teleconference between attorneys in which the movant explained the nature of the motion and its legal basis and requested but did not obtain concurrence in the relief sought.

Respectfully submitted,

HONIGMAN MILLER SCHWARTZ AND COHN LLP

By: s/Henry J. Andries, Jr.
Henry J. Andries, Jr. (P53669)
660 Woodward Avenue
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
(313) 465-7310

Dated:  June 21, 2007

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

FIELDTURF USA, INC., a Florida corporation, and
FIELDTURF TARKETT INC., a Canadian company,

                  Plaintiffs,

   vs

AIRSIDE TURF, INC., a Michigan corporation, and
JOSEPH DOBSON, an individual

                  Defendants.

Civil Action No. 07-11306
Hon. Avern Cohn

---

THE WATSON IP GROUP, PLC
Jovan N. Jovanovic (P66644)
Attorney for Plaintiffs
3133 Highland Drive, Suite 200
Hudsonville, MI 49426
(616)855-1521

FACTOR & LAKE, LTD.
Jody L. Factor
Attorneys for Plaintiffs
1327 W. Washington Blvd.
Suite 5G/H
Chicago, IL 60607
(312) 226-1818

HONIGMAN MILLER SCHWARTZ
AND COHN LLP
William D. Sargent (P38143)
Henry J. Andries, Jr. (P53669)
Robert J. Muchnick (P62369)
Attorneys for Defendants
2290 First National Building
Detroit, MI 48226
(313) 465-7000

---

# DEFENDANTS' BRIEF IN SUPPORT OF THEIR
# MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED ....................................................................... ii

STATEMENT OF CONTROLLING AUTHORITY ................................................. iv

I.      INTRODUCTION ...........................................................................................1

II.     BACKGROUND FACTS ................................................................................3

     A.      The Parties .........................................................................................3

     B.      Prior Litigation Between FieldTurf and AvTurf.................................3

     C.      Events Leading To The Separation of Mr.
          Dobson's Employment With Plaintiffs ...............................................4

III.    STATEMENT OF MATERIAL FACTS NOT IN DISPUTE ...........................5

IV.     LEGAL ARGUMENT .....................................................................................5

     A.      Summary Judgment of Plaintiffs' Trade Secrets Claim Is Warranted ...................5

          1.      Summary Judgment Is Warranted Because Plaintiffs Have Failed
               To Identify With Specificity Any Purported Trade Secrets ........................6

          2.      In Any Event, The General Information
               Identified By Plaintiffs Is Not Trade Secretive .........................................10

     B.      Plaintiffs Cannot Establish Their Breach Of Contract Claim ...............................15

     C.      Plaintiff's Common Law Claims Are Displaced By the MUTSA........................16

     D.      Defendants Should Be Awarded Their Attorneys' Fees Because Plaintiffs
          Brought and Pursued Their Trade Secrets Claim In Bad Faith ............................18

V.      CONCLUSION .............................................................................................20

## STATEMENT OF ISSUES PRESENTED

I.      Where Plaintiffs have failed, in their original Complaint, Verified Amended Complaint, Second Amended Complaint and answers to expedited interrogatories, to identify alleged trade secrets clearly, unambiguously and with specificity as required by Michigan law, whether summary judgment on Plaintiffs' claim for misappropriation of trade secrets under the Michigan Uniform Trade Secrets act is warranted as a matter of law.

          Defendants answer "Yes".

          Plaintiffs presumably answer "No".

II.     Where it is undisputed that Defendant Dobson did not have a non-competition or non-solicitation agreement with Plaintiffs and where Plaintiffs' claim is based on allegations that he will inevitably disclose his knowledge about readily ascertainable customer or prospective customer information, whether summary judgment on Plaintiffs' misappropriation of trade secrets claim under the Michigan Uniform Trade Secrets Act is warranted as a matter of law.

          Defendants answer "Yes".

          Plaintiffs presumably answer "No".

III.    Where Plaintiffs' Verified Amended Complaint bases their common law claims of misappropriation of trade secrets, unfair competition, breach of fiduciary duty, conversion and tortious interference with business relationships on their allegation of misappropriation of trade secrets under the MUTSA, whether the MUTSA displaces Plaintiffs' common law claims as a matter of law.

          Defendants answer "Yes".

          Plaintiffs presumably answer "No".

IV.    Where Plaintiffs' breach of contract claim is based on an agreement signed in connection with discussions about a potential business relationship and where Plaintiffs' allegations are based on non-confidential information purportedly provided to Defendant Dobson after he began working for Plaintiffs, whether summary judgment of Plaintiffs' breach of contract claim is warranted.

          Defendants answer "Yes".

          Plaintiffs answer "No".

V.   Where Plaintiffs waited more than 13 months after their association with Defendant Dobson ended to file their misappropriation of trade secrets claims against Defendants, and where the record demonstrates that their lawsuit was brought and pursued in bad faith, whether Defendants should be awarded their reasonable attorneys' fees under the MUTSA.

Defendants answer "Yes".

Plaintiffs presumably answer "No".

## STATEMENT OF CONTROLLING AUTHORITY

I.      Unless a plaintiff identifies purported trade secrets "clearly, unambiguously, and with specificity," a trade secret claim fails as a matter of law.  Utilase, Inc. v. Williamson, Nos. 98-1233 and 98-1320, 1999 WL 717969, at *6-8 (6th Cir. Sept. 10, 1999), *citing* Shatterproof Glass Corp v. Guarding Glass Co., 322 F. Supp. 854, 867 (E.D. Mich. 1970), *aff'd*, 462 F.2d 1115 (6th Cir.), *cert denied*, 409 US 1039 (1972).

II.     A party must establish more than the existence of generalized trade secrets and a competing former employee's knowledge of those generalized trade secrets in order to maintain a trade secret claim.  CMI Int'l, Inc. v. Intermet Int'l Corp., 251 Mich. App. 125, 134, 649 N.W.2d 808 (2002).

III.    Information regarding customers' particular needs learned during the course of employment is not a protectable trade secret, and if an employer wishes to restrict an employee's use of such information after the employment relationship ends, it must do so with an enforceable non-competition agreement.  Raymond James & Associates, Inc. v. Leonard & Co., 411 F. Supp. 2d 689, 696 (E.D. Mi 2006) *citing* McKesson v. Medical-Surgical, Inc. v. Micro Bio-Medics, Inc., 266 F. Supp. 2d 590, 596-97 (E.D. Mich. 2003), *relying on* Hayes-Albion v. Kuberski, 421 Mich. 170 (1984).

IV.     Under Michigan law, a trade secret cannot consist of information which is generally known in the industry and/or readily ascertainable, *i.e.*, capable of being acquired by competitors or the general public without undue difficulty or hardship.  MCL § 445.1902(d); Wysong Corp. v. M.I. Industries, 412 F. Supp. 2d 612, 627 (E.D. Mich. 2005).

V.      Information that a party has labeled as "confidential" must in fact be confidential in order to enforce a confidentiality agreement signed in consideration of employment.  Follmer Rudzewicz and Co. v. Kosco, 420 Mich. 394, 407 (1984).

VI.     Common law claims founded on alleged misappropriation of trade secrets under the Michigan Uniform Trade Secrets Act are displaced by the Act.  Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co., 270 F. Supp. 2d 943, 946 (W.D. Mich. 2003);  CMI Int'l, Inc. v. Intermet Int'l Corp. 251 Mich. App. 125, 132, 649 N.W.2d 808, 812-13 (2002).

VII.    If a claim of misappropriation of trade secrets under the Michigan Uniform Trade Secrets Act is made in bad faith, a court may award reasonable attorneys' fees to the prevailing party.  MCL § 445.1905.

# I.      INTRODUCTION

Defendants Joseph Dobson ("Dobson") and AirSide Turf, Inc. ("AirSide Turf") seek the dismissal of Plaintiffs' claims for misappropriation of trade secrets.[1]  The claims should be dismissed because Plaintiffs have failed, in their original complaint, verified amended complaint, second amended complaint and answers to Defendants' interrogatories, to identify with specificity the trade secrets they allege Defendants have misappropriated or will misappropriate.

Any doubt that Plaintiffs' trade secrets claims fail as a matter of law is removed by the law in Michigan that a plaintiff may not maintain a claim for misappropriation of trade secrets without first specifically identifying the trade secrets it claims have been or will be misappropriated.  *See*  Utilase, Inc. v. Williamson, Nos. 98-1233 and 98-1320, 1999 WL 717969, at *6-8 (6th Cir. Sept. 10, 1999) (unless a plaintiff identifies purported trade secrets "clearly, unambiguously, and with specificity," a trade secret claim fails as a matter of law); CMI Int'l, Inc. v. Intermet Int'l Corp., 251 Mich. App. 125, 134; 649 N.W.2d 808 (2002) (a party must establish more than the existence of generalized trade secrets and a competitor's employment of the former employee who may have knowledge of the trade secrets).

Here, Plaintiffs did not assert their purported trade secrets claim until more than thirteen months after terminating Mr. Dobson's employment.  Moreover, it is undisputed that Mr. Dobson did not have a non-compete or non-solicitation agreement with Plaintiffs.  The law is well-established that if an employer wishes to attempt to restrict an employee's use of customer

---

[1] Plaintiffs have asserted a claim for misappropriation of trade secrets under the Michigan Uniform Trade Secrets Act, MCL § 445.1905 (the "MUTSA").  Plaintiffs also have recharacterized that claim and asserted a myriad of common law claims based on the same allegations that provide the basis for Plaintiffs' claims under the MUTSA. The MUTSA displaces conflicting tort remedies based on an alleged misappropriation of trade secrets and, thus, Plaintiffs' common law claims also should be dismissed.  *See* Bliss Clearing Niagara, Inc. v. Midwest Bank Bond Co., 270 F. Supp. 2d 943, 948-49, 951 (W.D. Mich. 2003) (plaintiff's conversion claim dismissed to the extent that claim was based on an alleged use of trade secrets, because such claim must arise under the MUTSA only); *see also* CMI Int'l, 251 Mich. App. at 132 (the MUTSA "displace[s] conflicting tort remedies for misappropriation of a trade secret"); MCLA § 445.1908(1) (same).

information after the employment relationship ends, the employer must do so by requiring the employee to sign an enforceable non-compete agreement.  Because Plaintiffs did not require Mr. Dobson to sign a non-compete agreement, Plaintiffs now improperly attempt to use the MUTSA to restrict competition, obtain business information from competitors and threaten Mr. Dobson's livelihood.

Summary judgment of Plaintiffs' deficient trade secrets claim under the MUTSA is warranted as a matter of law because Plaintiffs have failed to identify with specificity the alleged trade secrets Defendants purportedly misappropriated.  Moreover, the generalized information identified by Plaintiffs is not trade secretive nor confidential because it is generally known in the industry and readily ascertainable by proper means.  For this same reason, Plaintiffs' newly added breach of contract claim, based on an agreement signed by Mr. Dobson in 2002 in connection with verbal discussions about a potential business relationship with Plaintiffs, is similarly deficient.  It is also deficient because it is not based on any information allegedly disclosed to Dobson under the agreement during discussions about a potential relationship, but instead on information allegedly obtained by Dobson during his subsequent employment.

Further, summary judgment of Plaintiffs' common law claims also is warranted because those claims are displaced by the MUTSA.  Finally, Defendants request that this Court find that Plaintiffs brought, and continue to pursue, their misappropriation of trade secrets claim in bad faith and award Defendants their attorneys' fees, pursuant to the MUTSA (providing, in part, that "[i]f a claim of misappropriation is made in bad faith . . . the court may award reasonable attorneys' fees to the prevailing party").

2

## II.   BACKGROUND FACTS

### A.   The Parties

Plaintiff FieldTurf Tarkett, Inc. ("FieldTurf"), through its Air FieldTurf division, manufactures and markets synthetic turf products for use alongside airport runways.[2]   Plaintiff FieldTurf USA, Inc., is a subsidiary of FieldTurf.   *See* Ex. 1, Second Amended Complaint, ¶¶ 2-3.

From approximately late 2002 until December 2005, Dobson worked for FieldTurf's Air FieldTurf division.   His assigned job title was Vice President, and his job duties included marketing Air FieldTurf's synthetic turf applications to airports.[3]   Prior to working for Air FieldTurf, Dobson worked for AvTurf, LLC ("AvTurf"), an Air FieldTurf competitor.   Dobson's job duties with AvTurf consisted primarily of marketing and selling AvTurf's synthetic turf applications to airports.   *See* Ex. 3, Affidavit of Joseph Dobson, ¶¶ 2-4.

### B.   Prior Litigation Between FieldTurf and AvTurf

In November of 2002, after Dobson left AvTurf and began working for Air FieldTurf, AvTurf sued FieldTurf in federal court in Illinois.   AvTurf alleged that AvTurf's members had developed and applied for a patented system for positioning artificial turf next to airport taxiways and runways, and that FieldTurf filed a competing patent application based on the theft of AvTurf's intellectual property, including AvTurf's business plans.   AvTurf alleged several

---

[2] Air FieldTurf's website describes its product as follows:  "Air FieldTurf™ is a patented aviation-grade artificial turf (AGAT™) product line, approved for installation by the Federal Aviation Administration (FAA), designed to improve airside safety by replacing traditional groundcover at airports and heliports.  Problems and costs associated with natural grass surfaces can be virtually eliminated.  Although most frequently applied to aircraft movement areas and runway end safety areas (RESAs), Air FieldTurf can be an efficient groundcover alternative throughout the operational environment."  A complete copy of Air FieldTurf's website is attached as Ex. 2.

[3] Although Dobson provided services for FieldTurf's Air FieldTurf division, he received his compensation from FieldTurf's American subsidiary, Plaintiff FieldTurf USA, Inc.  Dobson did not have a non-compete or non-solicitation agreement with any FieldTurf entity or division, and worked out of his home in Milford, Michigan.  *See* Ex. 3, Affidavit of Joseph Dobson, ¶ 4.  Although Plaintiffs' complaint alleged that Dobson was an "officer" of FieldTurf, their answers to interrogatories fail to identify any corporate records supporting such an allegation.  *See* Ex. 8, Plaintiffs' answer to interrogatory no. 13.

claims against FieldTurf, including misappropriation of trade secrets under the Illinois Trade Secrets Act and common law claims of conversion and misappropriation. *See* Ex. 4, AvTurf Complaint, ¶¶ 1, 13-16, 20-26).[4]

As part of its allegations, AvTurf claimed that *FieldTurf* obtained from Mr. Dobson, and used, AvTurf's "trade secrets and confidential and propriety information," including product specifications, marketing materials, installation information and customer contact lists. *See* Ex. 4, ¶¶ 28-29. FieldTurf denied AvTurf's allegations. *See* Ex. 5, FieldTurf Answer, ¶¶ 28-29. FieldTurf also successfully moved the Illinois federal court to dismiss AvTurf's common law claims of conversion and misappropriation as preempted by the Illinois Trade Secrets Act, because they were founded on AvTurf's misappropriation claim. *See* Ex. 6, FieldTurf motion papers. Notwithstanding AvTurf's allegations and the ongoing litigation, FieldTurf continued its working relationship with Mr. Dobson throughout the AvTurf litigation and beyond. In May 2004, FieldTurf and AvTurf resolved and voluntarily dismissed their litigation.

**C.   Events Leading To The Separation of Mr. Dobson's Employment With Plaintiffs**

Events leading to the separation of Dobson's relationship with Plaintiffs began in approximately October 2005, when FieldTurf presented Dobson with a proposed "Consultant Agreement" to perform sales and marketing related services for Air FieldTurf. The proposed agreement stated that Dobson "has completed 3 years of service as an independent consultant" to Air FieldTurf. Dobson did not sign the proposed agreement, and FieldTurf removed Dobson's access to its e-mail and computer system. Dobson claims Plaintiffs terminated their relationship,

---

[4] In December 2000, AvTurf completed the first ever installation of synthetic turf alongside airport runways at Midway Airport in Chicago. *See* Ex. 4, ¶ 17. In 2001 and 2002, AvTurf made a total of seven more turf installations at Chicago's O'Hare and Midway Airports, and Detroit's Metropolitan Airport. *See* Ex. 4, ¶ 19. FieldTurf did not make its first airport turf installation until June of 2003 at Boston's Logan International Airport. *See* Ex. 2, pp 10-11. Before expanding into aviation turf applications, FieldTurf developed, manufactured and marketed synthetic turf applications for sporting fields and playing surfaces. *See* Ex. 2, p. 2.

while Plaintiffs alleged that Dobson resigned his employment.  *See* Ex. 3, Affidavit of Joseph Dobson, ¶¶ 5-6.

After his association with Air FieldTurf ended, Dobson has primarily worked as a consultant in the industry.  In May 2006, Dobson formed his own company, Defendant AirSide Turf, Inc., and, beginning in approximately late October 2006, began performing services for AvTurf.  Defendants also were involved in the purchase of AvTurf by a third party.  The AvTurf purchase occurred on or about March 30, 2007.  *See* Ex. 3, ¶ 7.

### III.   STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Pursuant to this Court's motion practice guidelines, Defendants' Statement of Material Facts Not In Dispute are contained in a separate pleading document and incorporated herein by reference.

### IV.   LEGAL ARGUMENT

#### A.   Summary Judgment of Plaintiffs' Trade Secrets Claim Is Warranted

The Michigan Uniform Trade Secrets Act ("MUTSA") defines a "trade secret" as:

> "[I]nformation, including a formula, pattern, compilation, program, device, method, technique, or process that is both of the following:
>
> (i) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> (ii) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

MCLA §445.1902(d).

Plaintiffs have the burden of establishing each of the elements of a trade secrets claim, and cannot prevail unless they can demonstrate the existence of a trade secret and unlawful use

or disclosure thereof. *See* MCLA §445.1902(b).  As demonstrated below, Plaintiffs' claim for misappropriation of trade secrets under the MUTSA should be dismissed as a matter of law.

### 1.     Summary Judgment Is Warranted Because Plaintiffs Have Failed To Identify With Specificity Any Purported Trade Secrets

Under Michigan law, in order to maintain their claim, Plaintiffs must first specifically identify the trade secrets at issue in this case. *See* Arco Industries Corp. v. Chemcast Corp., 633 F.2d 435, 442 (6th Cir. 1980).  Unless Plaintiffs identify their alleged trade secrets "'***clearly, unambiguously, and with specificity***,'" their claim fails as a matter of law. *See* Utilase, Inc. v. Williamson, Nos. 98-1233 and 98-1320, 1999 WL 717969, at *6-8 (6th Cir. Sept. 10, 1999) (*citing* Shatterproof Glass Corp v. Guarding Glass Co., 322 F. Supp. 854, 867 (E.D. Mich. 1970), *aff'd*, 462 F.2d 1115 (6th Cir.), *cert denied*, 409 US 1039 (1972)) (emphasis added) (attached as Ex. 9); *See also* CMI Int'l, Inc. v. Intermet Int'l Corp., 251 Mich. App. 125, 134, 649 N.W.2d 808 (2002) (a party must establish more than the existence of generalized trade secrets and a competing former employee's knowledge of generalized trade secrets).

In Utilase, the plaintiff was in the "highly specialized, relatively new, and very competitive" business of using laser technology to weld sheet metal blanks, known as laser welding. Id. at *3.  The defendant resigned his employment with plaintiff and went to work for a competitor.  When he resigned, defendant removed confidential information from plaintiff's premises including drawings, computer diskettes, business plans, and financial analyses.  The district court dismissed plaintiff's claim for misappropriation of trade secrets, agreeing with the defendant that the plaintiff's claim "fail[ed] at the inception in that [p]laintiff refused to articulate any specific protectable trade secrets." Id. at *7.   The plaintiff was "deliberately vague in describing what it considered to be protectable trade secrets at issue . . . ." Id..  The Sixth Circuit affirmed, noting that during depositions "defense counsel attempted to ascertain the nature of

[plaintiff's] alleged twenty-three trade secrets; however, counsel for [p]laintiff objected . . . ." Id. The Sixth Circuit ultimately affirmed the dismissal of the trade secrets claim because the plaintiff failed "to come forward with evidence to create a question of fact as to whether it articulated a protectable trade secret under Michigan law." Id.

In CMI Int'l both plaintiff CMI and defendant Intermet developed and manufactured casting and forged metal parts for the automobile industry. Defendant Ruff was a mechanical engineer and formerly CMI's chief technical officer. After two failed attempts to acquire CMI, Intermet hired Ruff "to assume essentially the same duties as those that he performed for CMI." CMI Int'l, 251 Mich. App. at 128. CMI then sued Intermet and Ruff, asserting, in relevant part, a claim for misappropriation of trade secrets under the MUTSA. As here, CMI made broad allegations but did not specifically identify the trade secrets Ruff allegedly misappropriated. After some initial discovery, Intermet and Ruff filed a motion for summary disposition to dismiss the plaintiff's trade secrets claim. ***Before CMI deposed Ruff and other Intermet employees***, the trial court granted the defendants' summary disposition motion and dismissed the trade secrets claim. Id. at 134-35. The Michigan Court of Appeals affirmed, holding as follows:

> "No Michigan case has interpreted the statutory provision concerning threatened misappropriation, M.C.L. § 445.1903. Even assuming that the concept of "threatened misappropriation" of trade secrets encompasses a concept of inevitable disclosure, that concept must not compromise the right of employees to change jobs. See *Hayes-Albion Corp. v. Kuberski,* 421 Mich. 170, 188, 364 N.W.2d 609 (1984). ***Accordingly, we hold that for a party to make a claim of threatened misappropriation, whether under a theory of inevitable disclosure or otherwise, the party must establish more than the existence of generalized trade secrets and a competitor's employment of the party's former employee who has knowledge of trade secrets.*** See *PepsiCo, supra; FMC Corp. v. Cyprus Foote Mineral Co.,*899 F.Supp. 1477, 1482-1483 (W.D.N.C., 1995). ***Here, CMI offered no evidence of duplicity by Ruff or Intermet beyond the employment of Ruff and failed to***

7

> ***even suggest a specific trade secret that defendants were likely to misappropriate.***

Id. at 134, emphasis added.

As in Utilase and CMI Int'l, Plaintiffs, instead of articulating with specificity their alleged trade secrets, served answers to Defendants' expedited interrogatories broadly identifying the following general categories of information which they believe Dobson possessed, had access to and/or knowledge of during his association with Air FieldTurf:

> \*   technical and non-technical data pertaining to the drawings and specifications of FieldTurf's products for use at airports;
> \*   tests performed (e.g., wind tunnel testing, FAA fire burn testing, Jet Blast Erosion/FOD Reduction testing, etc.);
> \*   compilations of bid and proposal information as a whole;
> \*   compilations of customer information;
> \*   in-house marketing materials;
> \*   installation methods for its products;
> \*   lists of past, actual or potential customers or suppliers;
> \*   operational information;
> \*   planning or strategy information;
> \*   research and development information; and
> \*   financial information (including sales forecasts).

See Statement of Material Facts Not In Dispute, ¶ 17.

Other than the broad categories of information identified above, Plaintiffs refer to an Air FieldTurf project proposal dated more than three years ago, which they claim was taken "by or for" Defendants in order to unfairly compete against Plaintiffs. But again, when provided the opportunity to identify with specificity the trade secret information allegedly contained in the proposal, Plaintiffs identified in their answers to interrogatories only generalized information:

> "FieldTurf states that technical data pertaining to the drawings, description, specifications of FieldTurf's products, tests performed, test results, installation methods, pricing, and business strategies that FieldTurf employs, and compilations of bid and proposal information as a whole, in or associated with its April 23, 2004 Project Proposal are all trade secret information."

*See* Statement of Material Facts Not In Dispute, ¶ 19.

As in Utilase and CMI Int'l, expedited discovery responses in this case reveal that Plaintiffs fall far short of satisfying their initial threshold burden of identifying "clearly, unambiguously and with specificity" a protectable trade secret. That is, Plaintiffs' conclusory allegations and vague initial complaint, first amended complaint, second amended complaint and expedited interrogatory answers do not identify with specificity what any of its alleged generalized trade secretive information is and how this generalized, unspecified information relating to selling and installing synthetic turf at airports has any independent economic value.[5]

Put simply, Plaintiffs have been provided the opportunity in expedited discovery to satisfy their initial burden of identifying a protectable trade secret, but have failed to do so "clearly, unambiguously and with specificity," as required by law. At most, Plaintiffs' trade secrets claim is predicated on the existence of generalized information it claims constitutes trade secrets, coupled with an allegation that Defendants will inevitably use and disclose such information simply because they may have knowledge of it and are competing in the same industry. Based on Utilase and CMI Int'l, Plaintiffs' allegations are insufficient to support a trade secrets claim under Michigan law.

Defendants anticipate Plaintiffs will argue that they can maintain their claim without specifically and clearly identifying the alleged trade secrets, until further discovery reveals Plaintiffs actually have a basis for its claim. However, a similar argument was flatly rejected in CMI Int'l, *supra.,* where the plaintiff unsuccessfully argued that it should not be required to reveal its trade secrets until it was able to uncover evidence in discovery of an unlawful

───────────────────────

[5] They are unable to do so including because, as further explained in the next section, the information is generally known in the industry and readily ascertainable by proper means. Therefore, it is not trade secret information under the MUTSA.

misappropriation.  CMI Int'l, 251 Mich. App. at 134-035.  *See also* Fed. R. Civ. P. 56(b) (a defendant may move for summary judgment at any time).  Here, Plaintiffs have been permitted to amend their initial complaint twice and to conduct early, expedited discovery.  They have had ample opportunity to identify purported trade secrets "clearly, unambiguously and with specificity," but have failed to do so.  They have failed to do so because they are unable to identify any trade secret purportedly misappropriated by Mr. Dobson.

Based on the foregoing, summary judgment of Plaintiffs' misappropriation of trade secrets claim is warranted.

### 2.    In Any Event, The General Information Identified By Plaintiffs Is Not Trade Secretive

The crux of Plaintiffs' trade secrets claim is that Mr. Dobson had knowledge of "the peculiar needs of particular airport customers" during his Air FieldTurf association, and was "privy to FieldTurf's project proposals," which contained information and solutions relating to those customer needs.  *See* Statement of Material Facts Not In Dispute, ¶ 11.  Plaintiffs believe that the April 23, 2004 BWI project proposal is one such proposal, and that Defendants - more than three years after the proposal was prepared - will inevitably use that information to secure business from BWI.[6]  *See* Statement of Material Facts Not In Dispute, ¶¶ 18-19.

However, the law is well-settled that information regarding the identity of customers and their particular needs does not constitute a protectable trade secret under the MUTSA.  In Hayes-Albion v. Kuberski, 421 Mich. 170, 364 N.W.2d 609 (1984), the Michigan Supreme Court set forth the following principals of law applicable to a misappropriation claim under the MUTSA:

---

[6] When asked to identify any other project proposal allegedly taken by Mr. Dobson, Plaintiffs objected to the request as "premature" and did not identify any other proposal.  *See* Ex. 8, Plaintiffs' answer to interrogatory no. 12.

1.  An employee is free to maintain, and use after his employment ends, a personal list of the names and addresses of customers (id. at 615);

2.  In general, there is nothing improper in an employee establishing his own business and communicating with customers for whom he had formerly done work in his previous employment (id.);

3.  Information regarding a client's particular needs "is not a trade secret . . . ." (id.);

4.  An employer may have a sufficient protectable interest in information about a client's needs to support an agreement between the employer and employee whereby the employee would pay the employer an agreed-upon amount to call upon these customers after his employment terminated (of course, no such agreement exists in this case) (id.); and

5.  A customer has a right to deal with the person he chooses (id.).

Relying on Hayes-Albion, this district has consistently held that information regarding customers' particular needs is not a protectable trade secret under the MUTSA, and that if an employer wishes to restrict an employee's use of customer information after the employment relationship ends, *the employer must do it with an enforceable non-competition agreement.* Raymond James & Associates, Inc. v. Leonard & Co., 411 F. Supp. 2d 689, 696 (E.D. Mich. 2006) *citing* McKesson v. Medical-Surgical, Inc. v. Micro Bio-Medics, Inc., 266 F. Supp. 2d 590, 596-97 (E.D. Mich. 2003), *relying on* Hayes-Albion, *supra.* Of course, no such non-competition agreement exists in this case.

In McKesson Medical-Surgical, Inc v. Micro Bio-Medics, Inc, 266 F. Supp 590 (E.D. Mich. 2003), the plaintiff sued ex-sales employees who sold medical supplies to doctor's offices, and their new employer, plaintiff's competitor. The plaintiff asserted a myriad of claims, including misappropriation of trade secrets, which plaintiff alleged included the "identity of customers" and "the knowledge that each McKesson sales representative develops about each

11

customer's business and peculiar needs." Id. at 593-594.  The court dismissed the plaintiff's claim on summary judgment, holding that such information was not a trade secret under the MUTSA, including because the information was readily ascertainable from a variety of sources, such as the phone book and trade directories. Id. at 594-95.  The court reasoned as follows:

> "To hold otherwise, would subject every former employee who elects to call on customers he previously called upon with the former employer to a lawsuit for "trade secret" violation because it is likely, in all those situations, that the former employee would be aware of the needs of these customers which he/she learned about during employment with the previous employer.  To allow McKesson to prevail on its trade secrets claim in the case at bar would essentially interpret the MUTSA to be a blanket, statutorily created non-compete agreement between sales people and their former employers.  This would not serve the purpose of trade secrets law.  *See Fleming Sales Co, Inc. v. Bailey*, 611 F. Supp. 507, 514 (N.D.Ill.1985), (stating that allowing a similar claim would "not strike a proper balance between the purposes of trade secrets law and the strong policy in favor of fair and vigorous business competition")."

Id. at 596-97.[7]

Like the allegations in Raymond James, McKesson and Hayes-Albion, Plaintiffs' allegations in the present case that Defendants will use knowledge of customer needs and information to compete against Plaintiffs cannot support their trade secrets claim.  If Plaintiffs wanted to restrict Mr. Dobson's use of customer information after his employment, the law required them to have Mr. Dobson sign a non-competition agreement.  Here, it is undisputed they did not do so.  For this reason alone, Plaintiffs' trade secrets claim fails as a matter of law.

---

[7] In Fleming Sales Co., Inc. v. Bailey, 611 F. Supp. 507 (N.D. Ill. 1985), the federal court held, as a matter of law, that the names and addresses of the plaintiff's customers, the names of contact people, purchasing and payment histories, and present and future needs and buying procedures are not trade secrets, because such information is readily ascertainable by other means and "is nothing more than the kind of knowledge any successful salesman necessarily acquires through experience." Id. at 513-14.  The court also held that information relating to the plaintiff's principals and other sources of supply were not trade secrets because "the information is part and parcel of a salesman's experience in the RV business." Id. at 515.

Moreover, the general customer information identified by Plaintiffs in their answers to interrogatories is simply not trade secretive because it (a) has not been the subject of efforts that are reasonable under the circumstances to maintain its secrecy and (b) is generally known in the industry and/or readily ascertainable by proper means.  *See* MCL § 445.1902(d).   Under Michigan law, a trade secret cannot consist of "information which is readily ascertainable, *i.e.*, capable of being acquired by competitors or the general public without undue difficulty or hardship."  <u>Wysong Corp. v. M.I. Industries</u>, 412 F. Supp. 2d 612, 627 (E.D. Mich. 2005), *quoting* <u>Kubik, Inc. v. Hull</u>, 56 Mich. App. 335, 347, 224 N.W. 2d 80, 87 (1974).

Here, it cannot be rationally disputed that the identity of airports, *i.e.* customers, is generally known and readily ascertainable by a variety of accessible means, including the internet, phone book and trade directories.  In fact, Air FieldTurf's own website identifies the names of its airport customers as well as its airport contacts' names, telephone numbers and e-mail addresses.  *See* Ex. 2, pp. 10-15, 20-24.  Also, Plaintiffs attached as Exhibit E to their Second Amended Complaint the website of the Maryland Aviation Administration's Procurement Division advertising an expected artificial turf installation project at BWI Airport "To be determined."  *See* Ex. E to Second Amended Complaint (Ex. 1).  Any competitor interested in providing services at BWI airport may simply log on to the Maryland Aviation Administration's website to obtain contact and project information.  Thus, Plaintiffs own materials establish the readily ascertainable nature of customer information and needs.[8]

Furthermore, the outdated April 23, 2004 BWI project proposal (attached to Plaintiff's Second Amended Complaint as Ex. D) for "Air FieldTurf's Patent Pending Taxiway Shoulder

---

[8] Air FieldTurf's website identifies all the airports for which it has completed a turf installation (all test installations).  *See* Ex. 2.  However, the website does not identify BWI as one of those airports.  Plaintiffs' Second Amended Complaint alleges only that on or before April 2004, it spent time educating BWI "about the possible benefits of synthetic turf installed alongside runways."  *See* Ex. 1, ¶ 24.

Stabilizer System," upon which Plaintiffs heavily rely, was published to a public entity more than three years ago, when Air FieldTurf submitted it to the Maryland Aviation Administration, the government owner and operator of BWI.  According to its website, the Maryland Aviation Administration complies with the State of Maryland's Public Information Act, which means that members of the public, including any Air FieldTurf competitor, may seek to obtain the project proposal through a freedom of information request.[9]   *See* Ex. 11, Maryland Aviation Administration website pages.  Further, the BWI proposal and related drawings pertain to Air FieldTurf's patented product and attachment installment system which are generally known in the industry and readily ascertainable as a matter of public record, including through the United States patent office and the FAA's June 2006 Final Report titled "Airside Applications for Artificial Turf."  *See* Statement of Material Facts Not In Dispute, ¶¶ 7-8.

In fact, other general information identified by Plaintiffs in their answers to interrogatories, including technical and non-technical data pertaining to the drawings and specifications of FieldTurf's products, testing information (*e.g.* FAA fire burn and Jet Blast Erosion testing) and installation methods, has been comprehensively published in the FAA's June 2006 Final Report.  *See* Statement of Material Facts Not In Dispute, ¶¶ 5-7.  The FAA's Final Report is available to the public through the FAA's internet site and the National Technical Service Center.  *See* Statement of Material Facts Not In Dispute, ¶ 5.

Simply put, the general information identified by Plaintiffs in their answers to Defendants' interrogatories, including project proposals and the alleged "peculiar needs of particular customers," is not trade secretive information under Michigan law.  Based on the

---

[9] Plaintiffs themselves filed the proposal in the public record by attaching it as an Exhibit to their original complaint, first amended complaint and second amended complaint, without taking any steps to file it under seal or protect its alleged secrecy.

foregoing, summary judgment of Plaintiffs' trade secrets claim under the MUTSA is warranted as a matter of law.

### B.   Plaintiffs Cannot Establish Their Breach Of Contract Claim

In support of their breach of contract (Count VI) claim, Plaintiffs rely on a "Confidentiality Agreement" signed by Mr. Dobson on September 13, 2002, in connection with discussions about a "potential business relationship" and before Dobson received any offer to work for Plaintiffs.  *See* Statement of Material Facts Not In Dispute, ¶ 1; Ex. 3, Affidavit of Joseph Dobson, ¶ 3.  In fact, nowhere in the agreement does it state that the consideration for the agreement was Dobson's employment or agreement to work for Plaintiffs.  And, according to their own complaint, Plaintiffs' allegations are not based on information allegedly disclosed to Dobson in connection with discussions about Dobson possibly working with them, but instead on information allegedly learned by Dobson after he began working for Air FieldTurf.   See Statement of Material Facts Not In Dispute, ¶ 11.  For these reasons alone, Plaintiffs' breach of contract claim is fatally flawed.

Moreover, the mere fact that Plaintiffs' agreement may have generally designated information "confidential" does not make it confidential and does not entitle Plaintiffs to enforce an agreement signed in connection with discussions about a potential business relationship.  As the Michigan Supreme Court has made clear, information that an employer designates as confidential must in fact be confidential in order for the employer to enforce a confidentiality agreement signed as a condition or term of employment:

> "An employer is not however entitled to enforce a contractual provision which would require an employee to pay for using information labeled confidential which is not in fact confidential. Accordingly, in each case, the determination must be made whether the employee, has in fact, had access to confidential information which provides him with an unusual opportunity to obtain the patronage of particular clients of his former employer."

Follmer Rudzewicz and Co. v. Kosco, 420 Mich. 394, 362 N.W.2d 676, 683 (1984).

As explained in Section IV(A)(2) of this Brief, the information relied upon by Plaintiffs is neither confidential nor trade secretive.  *See* pp. 12-14, *infra*.  As in Follmer, Plaintiffs' disingenuous efforts to enforce a September 2002 agreement that was not signed as a condition of employment is merely another effort to improperly stifle fair competition and prevent Mr. Dobson from utilizing his general knowledge, skill and facility, which he first developed before he began working for Air FieldTurf.[10]

Based on the foregoing, summary judgment on Plaintiffs' breach of contract claim against Defendant Dobson is warranted.

### C.    Plaintiff's Common Law Claims Are Displaced By the MUTSA

The MUTSA displaces claims that are based upon the misappropriation of trade secrets. MCL § 445.1908.  In determining whether a claim is displaced by the MUTSA, courts generally examine whether the claim is based solely upon the misappropriation of a trade secret.  Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co., 270 F. Supp. 2d 943, 946 (W.D. MI 2003). If so, the claim must be dismissed.  Id.

In Bliss, the plaintiff asserted a common law claim of conversion based on the allegation that the competing Defendant solicited business with stolen information.   Based on the allegation, the court held the conversion claim to be founded on misappropriation, and dismissed it as displaced by the MUTSA.  In CMI Int'l, *supra*, the plaintiff filed a complaint against a former employee alleging misappropriation and other claims.  The Michigan Court of Appeals held that the Plaintiff's claim of breach of fiduciary duty, as well as other claims, were

---

[10] In fact, the agreement expressly states that "the parties communications hereunder will not serve to impair the right of either party to develop, make, use, procure or market products or services now or in the future which may be competitive with those offered by the other party."  *See* Statement of Material Facts Not In Dispute, ¶ 2.

"conflicting" within the meaning of the MUTSA, and, therefore, found that the "claims necessarily are based on [the MUTSA] because that statute displaced conflicting tort remedies for misappropriation of a trade secret." CMI Int'l, 251 Mich. App. 125, 132, 649 N.W.2d 808, 812-13 (2002).

Here, according to their own complaint, Plaintiffs' claims of conversion, breach of fiduciary duty, breach of contract, unfair competition, tortious interference with business relationships and common law misappropriation are based solely on the same allegations that provide the basis for Plaintiffs' trade secrets claim under the MUTSA:

### "NATURE OF THE ACTION

> 1.   This case involves the actions of FieldTurf's former employee, Joseph Dobson, and his current corporation/employer, Airside Turf, Inc., to misappropriate and use for their own benefit confidential, proprietary, and trade secret information belonging to FieldTurf.  Dobson's actions in this regard constitute conversion, breach of contract and a breach of his fiduciary duty with FieldTurf under Michigan law.  Both Dobson's and AirSide Turf's actions in this regard constitute unfair competition and tortious interference with FieldTurf.  Moreover, the actions of Defendants constitute a violation of Michigan's Uniform Trade Secrets Act, MCL 445.1901 *et seq.* as well as conversion of FieldTurf's property under the common law."

See Ex. 1, Second Amended Complaint, ¶ 1.

Thus, Plaintiffs' own description of the nature of their claims unequivocally establishes that each of their remaining claims is founded on the same alleged misappropriation of trade secrets by Defendants in violation of the MUTSA.  In fact, FieldTurf successfully made the same argument under the Illinois Trade Secrets Act in its prior litigation with AvTurf.  *See* Ex. 6. Therefore, dismissal of these claims is required because they are displaced by the MUTSA. MCL § 445.1908.

**D.**   **Defendants Should Be Awarded Their Attorneys'
Fees Because Plaintiffs Brought and Pursued
Their Trade Secrets Claim In Bad Faith**

Defendants request that this Court find that Plaintiffs brought and pursued its

misappropriation of trade secrets claim in bad faith and award Defendants their attorneys' fees,

pursuant to the MUTSA.  *See* MCLA §445.1905 (providing, in part, that ("[i]f a claim of

misappropriation is made in bad faith . . . the court may award reasonable attorney's fees to the

prevailing party").

Bad faith is established where there is: (1) objective speciousness of the plaintiff's claim;

and (2) subjective misconduct bringing or maintaining a claim for misappropriation of trade

secrets. *See* Contract Materials Processing, Inc. v. Kataleuna GmbH Catalysts, 222 F. Supp. 2d

733, 744, 746-48 (D. Md. 2002) (bad faith established and $134,945 in attorneys fees awarded

under Maryland's UTSA where plaintiff failed to proffer evidence that it took reasonable efforts

to maintain the secrecy of its information, plaintiff failed to identify evidence that defendants

acquired the information through improper means, and the timing of the lawsuit suggests that

plaintiff filed the action hoping to obtain a quick settlement from defendants that were concerned

about the effect of pending litigation on potential investors).

Here, Plaintiffs waited more than 13 months to sue Mr. Dobson on a theory that he will

inevitably use purported trade secret information to unfairly compete against them.  Perhaps not

coincidentally, their March 26, 2007 lawsuit was filed days before the March 30, 2007 purchase

of Air FieldTurf's competitor, AvTurf (a purchase in which Dobson was involved).   As in

Contract Materials, the timing of the lawsuit alone suggests that Plaintiffs were hoping to use the

effect of pending litigation to prevent the sale and continued operation of AvTurf, Plaintiffs only

real competitor in the industry.  In fact, Plaintiffs immediately sought to obtain broad injunctive

relief, including an injunction preventing Mr. Dobson from "brokering, consulting, or assisting

any entity associated with, or contemplating becoming involved in the manufacturing and/or marketing of synthetic turf products or services in association with airport runways." *See* Statement of Material Facts Not In Dispute, ¶ 14.

When its March 30 attempt to obtain temporary injunctive relief failed, Plaintiffs abandoned their efforts to obtain immediate injunctive relief and instead stipulated to conduct expedited discovery. *See* Statement of Material Facts Not In Dispute, ¶ 15. However, when asked during expedited discovery to identify with specificity the trade secrets that purportedly provide the basis of their claims, Plaintiffs served interrogatory answers identifying only general categories of information and a project proposal submitted to BWI Airport more than three years ago. Plaintiffs failed to meet their initial burden of identifying purported trade secrets clearly and with specificity, and the general information identified by Plaintiffs is simply not trade secretive. Since serving their vague interrogatory answers, Plaintiffs have served non-party deposition and document production subpoenas to competitors seeking "all documents and things concerning the potential sale of AvTurf and its assets to a third party" and "all bids/quotes for the existing and/or potential AvTurf projects . . .". *See* Statement of Material Facts Not In Dispute, ¶¶ 20-21.

The record reveals that Plaintiffs true motivation in filing and continuing this lawsuit is to use the MUTSA to restrict competition, obtain competitive business information from AvTurf and threaten Mr. Dobson's livelihood. Accordingly, Defendants request an award of attorneys fees under the MUTSA. MCL § 445.1905.

## V.   CONCLUSION

Based on the foregoing, Defendants respectfully request this Court to grant its Motion For Summary Judgment, dismiss Plaintiffs' claim of misappropriation of trade secrets under the MUTSA, dismiss Plaintiffs' remaining claims as displaced by the MUTSA, and award Defendants their reasonable attorneys' fees under the MUTSA, and award any other relief the Court deems just and appropriate.

Respectfully submitted,

HONIGMAN MILLER SCHWARTZ AND COHN LLP

By: s/Henry J. Andries, Jr.
Henry J. Andries, Jr. (P53669)
660 Woodward Avenue
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
(313) 465-7310

Dated:  June 21, 2007

### CERTIFICATE OF SERVICE

I, Henry J. Andries, Jr., hereby certify that on the 21st day of June, 2007, I electronically filed the foregoing paper and this Certificate of Service with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Jovan N. Jovanovic, Esq.

s/ Henry J. Andries, Jr.
Henry J. Andries, Jr. (P53669)
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
(313) 465-7310
handries@honigman.com

DETROIT.2591135.4