# EXHIBIT 8

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| FIELDTURF USA, INC., a Florida corporation, and FIELDTURF TARKETT INC., a Canadian company,<br><br>Plaintiffs,<br><br>v.<br><br>AIRSIDE TURF, INC., a Michigan corporation, and JOSEPH DOBSON, an individual,<br><br>Defendants. | CIVIL ACTION NO.: 07-11306 |

## PLAINTIFFS' RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES

The Plaintiffs, FieldTurf USA, Inc. and FieldTurf Tarkett Inc. (collectively "FieldTurf"), hereby object and respond to Defendants' First Set of Interrogatories to Plaintiffs, as follows:

### Preliminary Statement

FieldTurf makes the responses set forth herein subject to and without waiver of (1) all questions as to the admissibility into evidence of the responses; (2) the right to object to other discovery directed to the subject matter of Defendants' interrogatories; (3) the right to make additional objections or to seek protective orders in the event additional review of files and pretrial preparation result in further information with respect to any of Defendants' interrogatories; and, (4) the right to at any time revise, correct, add to or clarify any of the responses and/or objections contained herein, consistent with Fed.R.Civ.P. 26.

### General Objections

1.      FieldTurf objects generally to the interrogatories to the extent they seek information privileged or otherwise exempted from discovery by any applicable statute, the

Federal Rules of Civil Procedure, the Federal Rules of Evidence, the Local Rules, or any other applicable rule, decision, or other law, including but not limited to the attorney-client privilege, the work product exemption, the third-party communications privilege, the consulting expert exemption, and the trade secret privilege.

2. FieldTurf objects generally to the interrogatories to the extent they seek information that is beyond the scope of discovery as defined by the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and other applicable rules or law.

3. FieldTurf objects generally to the interrogatories to the extent they seek information that is irrelevant to this lawsuit or is otherwise not reasonably calculated to lead to the discovery of admissible evidence.

4. FieldTurf objects generally to the interrogatories to the extent they seek proprietary, trade secret and confidential information and/or documentation, subject to the terms of any appropriate protective order that may be entered by the Court.

5. FieldTurf objects generally to the interrogatories to the extent that they are designed to annoy, embarrass, harass, or impose an undue burden or expense on FieldTurf.

6. FieldTurf objects generally to the interrogatories to the extent that they seek a contention that relates to fact or the application of law to fact, as such interrogatories are deemed premature. FieldTurf is not required to respond to such premature interrogatories until discovery is complete, until a pretrial conference, or until such other later time as ordered by the Court.

7. FieldTurf objects generally to the interrogatories to the extent that they call for a legal conclusion.

8. FieldTurf objects generally to the interrogatories to the extent that they call for information not within the possession, custody, or control of FieldTurf. The responses given

herein are based upon information reasonably available to FieldTurf and documents within FieldTurf's possession, custody and control.

9. FieldTurf objects generally to the interrogatories to the extent that the burden of deriving or ascertaining the information sought therein is substantially the same for FieldTurf as for Defendants.

10. FieldTurf objects generally to the interrogatories to the extent they seek information about any product or service not relevant to this lawsuit.

11. FieldTurf objects generally to the interrogatories to the extent they seek information from time periods outside those relevant to this lawsuit, on the grounds that such interrogatories are overly broad and unduly burdensome, are irrelevant, and are not reasonably calculated to lead to the discovery of admissible evidence, or to the extent that the probative value of such evidence is outweighed by the annoyance, expense, or burden of production of the requested documents or information.

12. FieldTurf objects generally to every general definition, instruction, and interrogatory set forth in Defendants' requests to any extent that compliance would require FieldTurf to violate any confidentiality obligation FieldTurf owes to any third party, including but not limited to obligations created by any non-disclosure agreement.

13. FieldTurf objects generally to the "Definitions" and "Instructions" sections of Defendants' requests to the extent that they are inconsistent with, or purport to expand, FieldTurf's obligations beyond those imposed by the Federal Rules of Civil Procedure, the Local Rules, or other applicable rules or law.

14. FieldTurf objects generally to the definition of "document" to the extent it includes documents that are privileged or otherwise exempted from discovery by any applicable

statute, the Federal Rules of Civil Procedure, the Federal Rules of Evidence, the Local Rules, or any other applicable rule, decision, or other law, including but not limited to the attorney-client privilege, the work product exemption, the third-party communications privilege, the consulting expert exemption, and the trade secret privilege.

15. FieldTurf objects generally to the definition of "identify" to the extent it requires production of documents that are privileged or otherwise exempted from discovery by any applicable statute, the Federal Rules of Civil Procedure, the Federal Rules of Evidence, the Local Rules, or any other applicable rule, decision, or other law, including but not limited to the attorney-client privilege, the work product exemption, the third-party communications privilege, the consulting expert exemption, and the trade secret privilege.

16. These general objections shall be deemed to be incorporated in full into each of the objections set forth below. To the extent that any of these general objections are cited in a specific objection herein, those citations are provided as particularly applicable to the specific interrogatory, and are not to be construed as a waiver of any other general objection applicable to information falling within the scope of that interrogatory or any other interrogatory.

## INTERROGATORIES

### INTERROGATORY NO. 1

Identify all airport customers and/or prospective customers, including contact names, addresses and telephone numbers, with whom Dobson interacted during his FieldTurf employment for purposes of selling and/or marketing FieldTurf's synthetic turf products for use at airports.

### ANSWER

FieldTurf specifically objects to this interrogatory as overly broad and unduly burdensome, as it seeks to identify every customers and/or prospective customers with whom Dobson interacted during his FieldTurf employment when the same information can be easily obtained from Dobson himself. Moreover, FieldTurf objects to this Interrogatory as vague and ambiguous for failing to identify the term "interacted." To the extent FieldTurf understands this Interrogatory, it cannot possibly know each and every customers and/or prospective customers that Dobson may have been in contact with as Dobson may not have informed FieldTurf of same and/or may have met with some of them only briefly through an exhibition, a conference, and/or a show, etc.

Notwithstanding the foregoing, in lieu of identifying such information in this answer, pursuant to 33(d), documents will be provided to sufficiently show the identity of all airport customers and/or prospective customers with whom FieldTurf was aware of that Dobson had knowledge of during his FieldTurf employment, at a mutually convenient time and place, subject to a mutually agreed upon protective order to protect confidential business information, trade secrets and commercially sensitive documents.

### INTERROGATORY NO. 2

Identify all FieldTurf synthetic turf products for use at airports that Dobson was responsible for selling and/or marketing to airport customers and/or prospective customers during his FieldTurf employment.

### ANSWER

FieldTurf specifically objects to this interrogatory as the burden of identifying all FieldTurf synthetic turf products is the same as such information can be easily obtained from Dobson himself. FieldTurf also objects to this Interrogatory to the extent that it seeks information concerning all FieldTurf synthetic turf products for use at airports. Accordingly, such information is entirely irrelevant to the claims asserted in this action and is neither reasonably calculated to, nor likely to lead to the discovery of admissible evidence.

Notwithstanding the foregoing objections, and without waiver of same, FieldTurf states that Dobson was responsible for synthetic turf systems marketed under the Air FieldTurf designation.

### INTERROGATORY NO. 3

Identify all FieldTurf patents, patent applications, and licensing agreements, related to FieldTurf's synthetic turf products for use at airports and application of the products at airports.

### ANSWER

FieldTurf specifically objects to this Interrogatory to the extent that it seeks patents that are within the public domain, therefore, the burden of identifying the applicable documentation is substantially the same for both FieldTurf and Defendants. FieldTurf also objects to this Interrogatory to the extent that it seeks information concerning any patent, and patent applications, and licensing agreements, as such information is entirely irrelevant to the claims asserted in this action and is neither reasonably calculated to, nor likely to lead to the discovery

of admissible evidence. FieldTurf further objects to this Interrogatory on the ground that it seeks information that is highly confidential to FieldTurf, and there is no protective order in place.

Notwithstanding the foregoing objections, and without waiver of same, see attached documents designated herein as Exhibit A.

### INTERROGATORY NO. 4

Identify all agreements, including non-competition, non-solicitation and/or non-disclosure agreements, between FieldTurf and Dobson.

### ANSWER

A confidentiality agreement between FieldTurf and Dobson dated September 13, 2002.

### INTERROGATORY NO. 5

Identify the name, address and telephone number of each person who FieldTurf may call as a fact witness at any hearing related to injunctive relief, describe in detail the subject matter of each person's anticipated and/or expected testimony, and identify any statements FieldTurf has obtained from each such person.

### ANSWER

FieldTurf specifically objects to this Interrogatory as premature and as seeking information protected by the attorney-client and work product privileges.

Notwithstanding the foregoing objections, and without waiver of same, FieldTurf will identify information relevant to this Interrogatory once the case management scheduling is determined and entered by the Court and pursuant to Fed. R. Civ. P. 26. At this time, FieldTurf states that John Gilman, CEO of FieldTurf and Donald Van Dyke, Vice President of Air FieldTurf Division may be called as fact witnesses on the issues alleged in the Complaint.

7

FieldTurf also anticipates that as this action proceeds, it may discover further facts and documents relating to additional individuals responsive to this Interrogatory. Accordingly, FieldTurf reserves the right to modify or supplement its response to this Interrogatory with such pertinent information as it may subsequently discover.

## INTERROGATORY NO. 6

Identify with specificity all purported trade secret information, as defined herein, related to FieldTurf's synthetic turf products for use at airports, which Dobson allegedly possessed, had access to and/or knowledge of during his FieldTurf employment.[1]

## ANSWER

FieldTurf specifically objects to this interrogatory as the burden of identifying all purported trade secret information is the same as such information can be easily obtained from Dobson on the basis that he, himself, signed the confidentiality agreement with FieldTurf. Notwithstanding the foregoing objections and without waiver of same, FieldTurf states that trade secret information includes, but is not limited to, technical and non-technical data pertaining to the drawings, specifications of FieldTurf's products for use at airports, tests performed (e.g., wind tunnel testing, FAA fire burn testing, Jet Blast Erosion/ FOD Reduction testing, etc.), compilations of bid and proposal information as a whole, compilations of customer information, in-house marketing materials, installation methods for its products, lists of past, actual or potential customers or suppliers, operational information, planning or strategy information, research and development information, and financial information (including sales forecasts).

FieldTurf also anticipates that as this action proceeds, it may discover further facts and documents responsive to this Interrogatory. Accordingly, FieldTurf reserves the right to modify

---

[1] The term "trade secret" is defined herein in Paragraph 1 of the Definitions section of these Interrogatories.

8

or supplement its response to this Interrogatory with such pertinent information as it may subsequently discover.

### INTERROGATORY NO. 7

Identify with specificity all purported trade secret information, as defined herein, related to FieldTurf's synthetic turf products for use at airports, which Dobson allegedly misappropriated for his own use.

### ANSWER

FieldTurf specifically objects to this Interrogatory as premature on the grounds that it has not received any documents or responses to its discovery requests from Defendants.

Notwithstanding the foregoing and without waiver of same, see response to Interrogatory No. 6. Also, see ¶¶ 16 and 17 of the Verified Amended Complaint.

### INTERROGATORY NO. 8

Identify with specificity all purported trade secret information, as defined herein, related to FieldTurf's synthetic turf products for use at airports, which Dobson allegedly will misappropriate for his own use.

### ANSWER

See response to Interrogatory No. 7.

### INTERROGATORY NO. 9

Identify with specificity all purported trade secret information, as defined herein, related to FieldTurf's synthetic turf products for use at airports, which Dobson allegedly disclosed, divulged, disseminated and/or shared to third parties, including FieldTurf competitors.

### ANSWER

See response to Interrogatory No. 7.

**INTERROGATORY NO. 10**

Identify with specificity all purported trade secret information, as defined herein, related to FieldTurf's synthetic turf products for use at airports, which Dobson allegedly will inevitably disclose to third parties, including competitors of FieldTurf.

**ANSWER**

See response to Interrogatory No. 7.

**INTERROGATORY NO. 11**

Identify with specificity all alleged trade secret information, as defined herein, contained in FieldTurf's April 23, 2004 Project Proposal presented to the Maryland Aviation Administration for the Baltimore/Washington International Airport ("BWI") project, attached to FieldTurf's Verified Amended Complaint as Exhibit C.

**ANSWER**

FieldTurf states that technical data pertaining to the drawings, description, specifications of FieldTurf's products, tests performed, test results, installation methods, pricing, and business strategies that FieldTurf employs, and compilations of bid and proposal information as a whole, in or associated with its April 23, 2004 Project Proposal are all trade secret information.

**INTERROGATORY NO. 12**

Identify all project proposals which Dobson took with him to help "kick-start his Airside Turf business," as alleged in paragraph 14 of FieldTurf's Verified Amended Complaint.

**ANSWER**

FieldTurf specifically objects to this Interrogatory as overly broad and unduly burdensome as it asks for "all" project proposals, and is premature on the grounds that it has not received any documents or responses to its discovery requests from Defendants.

Notwithstanding the foregoing and without waiver of same, see ¶¶ 16 and 17 of the Verified Amended Complaint. FieldTurf will also produce documents responsive to this Interrogatory. FieldTurf also reserves the right to modify or supplement its response to this Interrogatory with such pertinent information as it may subsequently discover.

**INTERROGATORY NO. 13**

Identify the date Dobson was elected and/or appointed to an officer position with FieldTurf and/or Air FieldTurf, the manner in which he was elected and/or appointed to an officer position, and all corporate records, including by-laws and minutes, related to Dobson's election and/or appointment to an officer position with FieldTurf.

**ANSWER**

The exact date as to when Mr. Dobson became V.P. of Air FieldTurf is uncertain. However, it is believed that it occurred shortly after he was hired in 2002. The manner in which he was appointed V.P. of Air FieldTurf, was that he had expressed a need and desire for such a position, and John Gilman, CEO of FieldTurf, agreed.

**INTERROGATORY NO. 14**

Identify the person who provided FieldTurf the email dated January 18, 2007 and attached as Exhibit B to FieldTurf's Verified Amended Complaint, the date FieldTurf received the e-mail and the manner in which FieldTurf received the e-mail.

**ANSWER**

The e-mail dated January 18, 2007 attached as Exhibit B to FieldTurf's Verified Amended Complaint was emailed by William Schomburg to Jody Factor, counsel for FieldTurf, and Mr. Factor provided same to FieldTurf in mid February.

### INTERROGATORY NO. 15

Identify with specificity all steps and/or measures taken by FieldTurf to guard the secrecy of its purported trade secrets, as alleged in paragraph 35 of the Verified Amended Complaint.

### ANSWER

FieldTurf provides the following: confidentiality agreements are in place among officers of FieldTurf; only Air FieldTurf employees have access to trade secret information; passwords are provided to employee to grant limited access to FieldTurf's computers and they are changed every month; trade secret information is kept among Air FieldTurf personnel and must have a password to gain access; and/or "confidential" or "proprietary" legend stamps are attached to information that are deemed trade secret.

FieldTurf reserves the right to modify or supplement its response to this Interrogatory with such pertinent information as it may subsequently discover.

### INTERROGATORY NO. 16

Identify all facts which you rely on to support your allegation that Dobson and/or AirSide Turf misappropriated FieldTurf's trade secret information, identifying each person with knowledge of facts supporting the allegation and the substance of each person's knowledge.

### ANSWER

FieldTurf specifically objects to this Interrogatory on the basis that a response may be protected by the attorney-client and/or work product privileges. Notwithstanding the foregoing, the persons with knowledge of facts are John Gilman, CEO of FieldTurf and Donald Van Dyke, Vice President of Air FieldTurf Division on the issues alleged in the Complaint. Also, see ¶¶ 16, 17, 18, and 24-26 of the Verified Amended Complaint.

FieldTurf also states that Dobson, formerly the Vice President of Air FieldTurf (a division of FieldTurf), and in that capacity, was entrusted with valuable, confidential information

about FieldTurf's bid and proposal information, including product specifications, detailed attachment systems for fastening the synthetic turf grass to the runway side, proprietary installation techniques for the synthetic turf grass/infill, and detailed drawings of its products. Not to mention, he was privy to FieldTurf's customers and prospective customers, and he had direct access to FieldTurf's computer database, which maintained Air FieldTurf's projects and prospective project files. Also, as discussed in its Verified Amended Complaint, the email (Exhibit B to the Verified Amended Complaint) establishes that Dobson took with him FieldTurf's confidential, proprietary, and trade secret information. FieldTurf also states that Dobson may have downloaded from FieldTurf's computer database, its confidential, proprietary, and trade secret information, including, but not limited to, the project files, customer lists, marketing information, proposed project files, engineering information, FAA testing information, accounting information, and employee files, etc. Finally, FieldTurf is informed and alleges herein that Dobson has already disclosed that information to Baltimore/Washington International Airport, and to FieldTurf's competitors, Sportexe, and AvTurf. Lastly, see ¶¶ 18 to 26 of the Verified Amended Complaint.

### INTERROGATORY NO. 17

Identify all facts which you rely on to support your allegation that Dobson and/or AirSide Turf disclosed FieldTurf's trade secret information, identifying each person with knowledge of facts supporting the allegation and the substance of each person's knowledge.

### ANSWER

See response to Interrogatory No. 16.

## INTERROGATORY NO. 18

Identify all facts which you rely on to support your allegation that Dobson and/or AirSide Turf will inevitably disclose FieldTurf's trade secret information, identifying each person with knowledge of facts supporting the allegation and the substance of each person's knowledge.

## ANSWER

Recently, FieldTurf became aware that Defendants are submitting a bid for an artificial turf installation project at Baltimore/Washington International Airport ("BWI"). In the past, FieldTurf had spent significant time and resources to educate BWI about the possible benefits of synthetic turf installed alongside runways. Dobson, through his former capacity with FieldTurf, had knowledge of FieldTurf's relationship with BWI; and now, Dobson is improperly using FieldTurf's contact lists to acquire the artificial turf installation project now being considered by BWI. Also, Dobson will undoubtedly use FieldTurf's highly confidential, proprietary, and trade secret bid and proposal information in Defendants' efforts to secure the BWI bid. This is inevitable inasmuch as Dobson, in his role as Vice President of Air FieldTurf, was chiefly responsible for working on the BWI project. Accordingly, based on Dobson's knowledge of FieldTurf's confidential, proprietary, and trade secret information, and the fact that he established a new company to compete with FieldTurf, and the fact that he has already disclosed such information as alleged in the Verified Amended Complaint, ¶¶ 16 – 26, it is only inevitable that Dobson will disclose such information in the future.

Furthermore, Dobson has contacted at least one of FieldTurf's customer and/or prospective customers, including, but not limited to, Baltimore/Washington International Airport in Maryland to submit a bid proposal. As such, it is only inevitable that Dobson will disclose FieldTurf's trade secret information to a third party. FieldTurf also states that the persons with

knowledge of facts are John Gilman, CEO of FieldTurf and Donald Van Dyke, Vice President of Air FieldTurf Division, on the issues alleged in the Complaint.

### INTERROGATORY NO. 19

Identify all facts which you rely on to support your allegation that Dobson and/or AirSide Turf interfered, and/or is interfering, with FieldTurf's contractual relationships with third parties, identifying each existing or prospective contracts, each person with knowledge of facts supporting the allegation and the substance of each person's knowledge.

### ANSWER

FieldTurf specifically objects to this Interrogatory inasmuch as it is burdensome and oppressive, especially since the response is more appropriate in the form of documents which will be produced in compliance with Defendants' documents requests to FieldTurf. Also, FieldTurf objects to this Interrogatory on the grounds that it prematurely seeks information which FieldTurf expects to obtain during the expedited discovery process. Notwithstanding the foregoing, FieldTurf will provide each existing or prospective contracts in the form of documents. Recently, FieldTurf became aware that Defendants are submitting a bid for an artificial turf installation project at Baltimore/Washington International Airport ("BWI"). In the past, FieldTurf had spent significant time and resources to educate BWI about the possible benefits of synthetic turf installed alongside runways. Dobson, through his former capacity with FieldTurf, had knowledge of FieldTurf's relationship with BWI; and now, Dobson is improperly using FieldTurf's contact lists to acquire the artificial turf installation project now being considered by BWI. Also, Dobson will undoubtedly use FieldTurf's highly confidential, proprietary, and trade secret bid and proposal information in Defendants' efforts to secure the BWI bid. This is inevitable inasmuch as Dobson, in his role as Vice President of Air FieldTurf, was chiefly responsible for working on the BWI project.

FieldTurf states that the person with knowledge of facts is John Gilman, CEO of FieldTurf and Donald Van Dyke, Vice President of Air FieldTurf Division on the issues alleged in the Complaint.

### INTERROGATORY NO. 20

Identify all facts which you rely on to support your allegation that Dobson converted FieldTurf's "confidential, proprietary, and trade secret rights and interests in the project proposals," identifying each project proposal allegedly converted, each person with knowledge of facts supporting the allegation and the substance of each person's knowledge.

### ANSWER

See response to Interrogatory No. 17. Also, see ¶¶ 16-26 of the Verified Amended Complaint. FieldTurf also believes that Dobson may have downloaded from FieldTurf's computer database, its confidential, proprietary, and trade secret information, including, but not limited to, the project files, customer lists, marketing information, proposed project files, engineering information, FAA testing information, accounting information, and employee files, etc. FieldTurf will also provide a synchronization log, which shows each project files Dobson downloaded from FieldTurf's server. FieldTurf states that the person with knowledge of facts is John Gilman, CEO of FieldTurf and Donald Van Dyke, Vice President of Air FieldTurf Division, on the issues alleged in the Verified Amended Complaint.

### INTERROGATORY NO. 21

Identify with specificity all monetary damages alleged by FieldTurf, including a detailed breakdown of the manner in which FieldTurf calculated the amount of alleged money damages.

**ANSWER**

FieldTurf specifically objects to this Interrogatory as premature on the grounds that its investigation relating to injury and damages has just begun and FieldTurf has yet to receive any relevant documents from Defendants. At a minimum, damages can be attributed to lost profits and/or a reasonably royalty associated with the Baltimore/Washington International Airport in Maryland and punitive damages.

FieldTurf further objects to this Interrogatory as premature to the extent that the responses may be subject of expert reports and no experts have been hired at this time. Expert opinions that FieldTurf expects to rely on at trial, and the factual bases for those opinions, will be fully described in FieldTurf's expert report(s) and rebuttal expert report(s). FieldTurf will provide these reports in accordance with the Court's Case Management Schedules.

**INTERROGATORY NO. 22**

Identify with specificity the personal knowledge relied upon by John Gilman, CEO of FieldTurf, to support his statement made in his March 29, 2007 Verification that the factual allegations contained in the Verified Amended Complaint are true and correct.

**ANSWER**

FieldTurf specifically objects to this Interrogatory on the basis that a response may be protected by the attorney-client and/or work product privileges. FieldTurf further objects to this Interrogatory as overly broad and unduly burdensome.

Notwithstanding the foregoing objections, and without waiver of same, FieldTurf states that John Gilman is personally knowledgeable with respect to the factual allegations contained in the Verified Amended Complaint.

17

## INTERROGATORY NO. 23

Identify the names, job title, address and telephone number of all subordinates and colleagues reporting to Mr. Gilman who reported information to Mr. Gilman, as stated in Mr. Gilman's March 29, 2007 Verification, describe in detail the information reported to Mr. Gilman by each subordinate and colleague, the date each subordinate and colleague reported the information to Mr. Gilman and the manner in which the information was reported to Mr. Gilman.

## ANSWER

FieldTurf specifically objects to this Interrogatory on the basis that "subordinates" and "colleagues" are not a party to this case, and, as such, it is grossly over broad, burdensome, vague, irrelevant, and not reasonably calculated to lead to the discovery of relevant evidence, especially since the response is more appropriate in the form of documents which will be produced in compliance with Defendants' document requests to FieldTurf. FieldTurf further objects to this Interrogatory as some of the "information," to the extent that they exist, and that they are relevant and responsive, may be protected by the attorney-client and/or work product privileges.

Notwithstanding the foregoing and without waiver of same, FieldTurf states that Donald Van Dyke, V.P. of Air FieldTurf, and Bessy Argyropoulos, Executive Assistance to John Gilman reported information to Mr. Gilman. With respect to the information reported to Mr. Gilman, it is protected under work product privileges.

Respectfully submitted

As to the fact,

_____
John Gilman

As to the law,

_____
Jovan N. Jovanovic (P66644)
The Watson IP Group, PLC
3133 Highland Drive, Suite 200
Hudsonville, MI 49426
(616) 855-1521 Telephone

18

(866) 369-7391 Facsimile  
Jjovanovic@watson-ip.com

ATTORNEYS FOR PLAINTIFFS

Dated: __April 30 2007__          Dated: __4/30/2007__