UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FIELDTURF USA, INC., a Florida corporation, and
FIELDTURF TARKETT INC., a Canadian company,

        Plaintiffs,                    Civil Action No. 07-11306
                                                Hon. Avern Cohn

vs

AIRSIDE TURF, INC., a Michigan corporation, and
JOSEPH DOBSON, an individual

        Defendants.

---

| | |
|---|---|
| THE WATSON IP GROUP, PLC<br>Jovan N. Jovanovic (P66644)<br>Attorney for Plaintiffs<br>3133 Highland Drive, Suite 200<br>Hudsonville, MI 49426<br>(616)855-1521<br><br>FACTOR & LAKE, LTD.<br>Jody L. Factor<br>Attorneys for Plaintiffs<br>1327 W. Washington Blvd.<br>Suite 5G/H<br>Chicago, IL 60607<br>(312) 226-1818 | HONIGMAN MILLER SCHWARTZ<br>AND COHN LLP<br>William D. Sargent (P38143)<br>Henry J. Andries, Jr. (P53669)<br>Robert J. Muchnick (P62369)<br>Attorneys for Defendants<br>2290 First National Building<br>Detroit, MI 48226<br>(313) 465-7000 |

---

**STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

A. **Before Working For Air FieldTurf, Defendant Dobson Signed A Confidentiality Agreement**

1. On September 13, 2002, Defendant Dobson signed a document titled "Confidentiality Agreement" which stated:

> "The parties acknowledge that FieldTurf and the Company are in discussions about a potential business relationship (the "Business Relationship") in connection with which certain Confidential Information (as defined below) of FieldTurf and the Company may be disclosed to the other party."

*See* Ex. B to Plaintiffs' Second Amended Complaint, attached as Ex. 1 to Defendants' supporting Brief.

2. The September 13, 2002 Confidentiality Agreement also states:

> "8. <u>Competitive Information</u>. Each of the parties acknowledges and understands that the other party may now market or have under development products or services which are competitive with products or services now offered or which may be offered by the other party, and, except as expressly set forth in this Agreement, the parties communications hereunder will not serve to impair the right of either party to develop, make, use, procure or market products or services now or in the future which may be competitive with those offered by the other party, nor require either party to disclose any planning or other information to the other party."

*See* Ex. B to Plaintiffs' Second Amended Complaint, attached as Ex. 1 to Defendants' supporting Brief.

B. **Dobson's Employment Relationship With Plaintiffs Officially Ended In December 2005**

3. Dobson's employment with Plaintiffs officially ended in December 2005. *See* Ex. 1, Second Amended Complaint, ¶¶ 10, 17.

4. More than four months later, Dobson formed his own company, Defendant AirSide Turf, Inc. ("AirSide Turf"). *See* Ex. 1, Second Amended Complaint, ¶ 18.

1

### C. In June 2006 The Federal Aviation Administration Published Its Final Report On Airside Applications For Artificial Turf

5.  In June 2006, the U.S. Department of Transportation's Federal Aviation Administration ("FAA") published its "Final Report" titled "Airside Applications for Artificial Turf." *See* Ex. 7, Final Report, pp. 1-2. The Final Report is available to the public through the FAA's internet site and the National Technical Information Service. *See* Ex. 7, pp. 2-3.[1]

6.  The FAA's Final Report states, "During the time of this study, there were only two companies, Air Fieldturf, Inc. and AvTurf, L.L.C., that provided and installed artificial turf for airside use … each company has its own installation method as described in the following sections." Ex. 7, p. 31.

7.  In addition to detailing and describing airport considerations for airside applications of artificial turf, the FAA's Final Report details and describes the installation methods of both Air FieldTurf and AvTurf and testing of airside turf applications, including Jet Blast Testing, FAA Flammability Field Tests, and Flammability tests conducted by both AirField Turf and AvTurf. *See* Ex. 7, pp. 4-5, 31-47, 48-70.

8.  The Final Report reviews and shows Air FieldTurf's test installation projects at Boston Logan International Airport, Honolulu International Airport, San Francisco International Airport and Ocean City International Airport. *See* Ex. 7, pp. 13-14. The Report also reviews and shows AvTurf's test installation projects at Chicago's O'Hare and Midway Airports and Detroit's Metropolitan Airport. *See* Ex. 7, pp. 13-14.

---

[1] The Final Report totals 239 pages. For purposes of economy, only cited pages of the Report are attached as Ex. 7. The entire report will be made available to the Court upon request.

2

### D. 13 Months After Dobson's Association with Plaintiffs Ended, Plaintiffs Sued Dobson

9. On March 26, 2007, Plaintiffs filed their original Complaint, alleging claims of misappropriation of trade secrets under the MUTSA (against both Defendants), unfair competition (against both Defendants), breach of fiduciary duty (against Dobson) and conversion (against Dobson). *See* 03/26/07 Complaint. On March 29, 2007, Plaintiffs filed their Verified Amended Complaint, adding a claim of tortious interference with business relationships (against both Defendants). *See* 03/29/07, Verified Amended Complaint. On June 14, 2007, Plaintiffs filed their unverified Second Amended Complaint, adding a claim of breach of contract (against Dobson). *See* Ex. 1, Second Amended Complaint.

10. Neither Plaintiffs' original Complaint, Verified Amended Complaint nor unverified Second Amended Complaint alleged that Dobson signed a non-competition or non-solicitation agreement during his FieldTurf employment. *See* Ex. 1.

### E. Allegations Contained In Plaintiffs' Complaint

11. Plaintiffs' have alleged that Dobson misappropriated for Defendants' own use, and will inevitably disclose, "proprietary, confidential and trade secret" information which he possessed, had access to and/or knowledge of during his employment as "Vice President" of Air FieldTurf, including project proposals and the "peculiar needs of particular airport customers." *See* Ex. 1, ¶¶ 1, 15-16.

12. Plaintiffs further alleged that Mr. Dobson formed AirSide Turf "to compete with FieldTurf in synthetic turf products for use alongside airport runways and/or to consult to competitors of FieldTurf." *See* Ex. 1, ¶ 18.

13. Plaintiffs also alleged that, based "on information and belief," Mr. Dobson was "facilitating a deal to acquire AvTurf's assets" on behalf of a third party. *See* Ex. 1, ¶ 30.

### F. The Parties Stipulated To Conduct Expedited Discovery

14. On March 29, 2007, Plaintiffs filed an *Ex Parte* Motion for Temporary Restraining Order and Motion for Expedited and Early Discovery. *See* Plaintiff's 03/29/07 Motions. Among other requested relief, Plaintiffs' Ex Parte Motion sought to enjoin Defendants "from brokering, consulting, or assisting any entity associated with, or contemplating becoming involved in the manufacturing and/or marketing of synthetic turf products or services in association with airport runways." *See* Plaintiffs' 03/29/07 Ex Parte Motion for TRO, p. 2, ¶ d.

15. On March 30, 2007, this Court declined Plaintiffs' request for entry of a temporary injunction and scheduled a hearing to occur one week later for purposes of determining whether injunctive relief should issue. Shortly thereafter, Plaintiffs stipulated to vacate the scheduled injunction hearing and to conduct expedited discovery. *See* 04/05/07 Stipulated Order.

### G. Plaintiffs Served Responses to Defendants' First Set of Interrogatories

16. On or about April 30, 2007, Plaintiffs served their Responses to Defendants' First Set of Interrogatories. *See* Ex. 8, Plaintiffs' interrogatory answers.

17. In response to Defendants' requests that Plaintiffs identify with specificity all trade secrets which they claim Dobson misappropriated, will misappropriate, disclosed to third parties or will inevitably disclose to third parties, Plaintiffs responded as follows:

> . . . FieldTurf states that trade secret information includes, but is not limited to, technical and non-technical data pertaining to the drawings, specifications of FieldTurf's products for use at airports, tests performed (e.g., wind tunnel testing, FAA fire burn testing, Jet Blast Erosion/FOD Reduction testing, etc.), compilations of bid and proposal information as a whole, compilations of customer information, in-house marketing materials, installation methods for its products, lists of past, actual or potential customers or suppliers, operational information, planning or strategy information, research

4

and development information, and financial information (including sales forecasts).

*See* Ex. 8, Plaintiff's answers to interrogatories nos. 6-10.

18. Also, Plaintiffs' interrogatory answers referred Defendants to Paragraphs 16 and 17 of their Verified Amended Complaint, which alleged that a certain Air FieldTurf "Project Proposal" dated ***April 23, 2004*** was taken from FieldTurf "by or for" Defendants to compete against Plaintiffs, and that the proposal contained trade secret information. *See* Ex. 8, answers to interrogatory nos 7-10; *See* Verified Amended Complaint, ¶¶ 16-17.[2]

19. In response to Defendants' request that Plaintiffs identify with specificity all alleged trade secret information contained in the April 23, 2004 Baltimore-Washington International ("BWI") Airport Project Proposal (attached to FieldTurf's Second Amended Complaint as Exhibit D), FieldTurf answered as follows:

> FieldTurf states that technical data pertaining to the drawings, description, specifications of FieldTurf's products, tests performed, test results, installation methods, pricing, and business strategies that FieldTurf employs, and compilations of bid and proposal information as a whole, in or associated with its April 23, 2004 Project Proposal are all trade secret information.

*See* Ex. 8, answer to interrogatory no. 11.

### H. Plaintiffs Serve Third-Party Subpoenas Seeking AvTurf's Business Information

20. On or about May 11, 2007, Plaintiffs served third party William L. Schomburg with a deposition and document production subpoena issued by the U.S. District Court for the Central District of Illinois, seeking, among other information, "All documents and things concerning the potential sale of AvTurf and its assets to a third party," and "All bids/quotes for

---

[2] Paragraphs 16 and 17 of Plaintiff's Verified Amended Complaint are repeated verbatim in Paragraphs 21 and 22 of Plaintiffs' Second Amended Complaint. *See* Ex. 1, ¶¶ 21-22.

the existing and/or potential AvTurf projects at airports," including BWI airport. *See* Ex. 9, Schomburg subpoena.

21. On or about May 23, 2007, Plaintiffs served third party Sportexe Construction Services, Inc. with a deposition and document production subpoena issued by the U.S. District Court for the Western District of Texas seeking, among other information, "All documents and things concerning the potential sale of AvTurf and its assets to a third party," and "All bids/quotes for the existing and/or potential AvTurf projects at airports," including BWI airport. *See* Ex. 10, Sportexe Construction subpoena.

Respectfully submitted,

HONIGMAN MILLER SCHWARTZ AND COHN LLP

By: s/Henry J. Andries, Jr.
Henry J. Andries, Jr. (P53669)
660 Woodward Avenue
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
(313) 465-7310

Dated: June 21, 2007

## CERTIFICATE OF SERVICE

I, Henry J. Andries, Jr., hereby certify that on the 21st day of June, 2007, I electronically filed the foregoing paper and this Certificate of Service with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Jovan N. Jovanovic, Esq.

s/ Henry J. Andries, Jr.
Henry J. Andries, Jr. (P53669)
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
(313) 465-7310
handries@honigman.com

DETROIT.2644025.2